GEORGE C. SWALLOW and Another v. JOHN STRONG and Others.[1]

May 3, 1901.

Nos. 12,494, 12,495—(50, 51).

## Statute of Frauds—Memorandum.

The memorandum of a contract for the sale of land, to satisfy the statute of frauds, may consist wholly of letters, if they are connected by reference, expressed or implied, so as to show on their face that they all relate to the same subject-matter. · This relation cannot be shown by parol, but it must appear from the nature of the contents of the letters, or by express reference therein to each other.

## Same—Description of Land.

Such memorandum, whether it consists of a single writing or several, must express the substantial terms of the contract and its subject-matter with reasonable certainty. It is not, however, essential that the land be described with precision, if the writing on its face is an adequate guide to find it.

[1] Reported in 85 N. W. 942.

**Same—Letters.**

> Rules applied, and letters between the parties as to the sale of pine timber considered, and *held* that they are sufficiently connected and certain to constitute a valid contract for its sale.

**Findings Sustained by Evidence.**

> The findings of fact and decision of the trial court, to the effect that the defendant made a contract to sell the timber to the plaintiffs, or, in case he sold it upon an outstanding option, to pay them a stipulated sum, are sustained by the evidence.

Action in the district court for St. Louis county to enforce specific performance of a contract for the sale of standing timber and for general relief. The case was tried before Ensign, J., who made findings of fact and as conclusions of law directed that the action be dismissed as to the defendants other than John Strong, and that plaintiff recover from defendant John Strong $18,500 damages. From a judgment entered· pursuant to the findings plaintiffs and defendant John Strong severally appealed. Affirmed.

*Mahon & Agatin,* for plaintiffs, appellants and respondents.

*White & McKeon* and *C. A. Kent,* for defendant John Strong, appellant and respondent.

START, C. J.

This action was brought to compel the specific performance of an alleged contract for the sale of the timber on certain lands in the county of St. Louis. The complaint alleged that the defendants were the owners of the lands, describing them, and that on November 13, 1899, the defendants, other than John Strong, by and in the name of their agent, John Strong, and that he in his own behalf, agreed in writing to sell and convey on December 2, 1899, to the plaintiffs, all the timber on such lands for the sum of $180,000, to be paid, $3,000 at the time of the making of the contract, which sum the plaintiffs paid, and the balance at the times alleged in the complaint; that it was further agreed that should the defendants sell the timber to any one else under an option expiring December 1, 1899, theretofore given to R. D. Mallett, the plaintiffs should be paid by the defendants one-half of $37,000, which was the difference between the contract price

and the amount of the Mallett option; that the defendants made no sale under the option; that the plaintiffs performed, and were ready and willing to perform, all of the terms of the contract to be performed by them, but the defendants refused to perform the contract on their part; that such timber was on December 2, 1899, of the value of $210,000. The complaint prayed for specific performance of the contract and for general relief.

The answer, so far as here material, was a general denial, except that it admitted that the defendants were, at the time of the making of the alleged contract, owners of the land, and a plea of the statute of frauds. It also alleged that Mallett assigned his option to Messrs. Mitchell & McClure, and that the defendants sold the timber in November, 1899, to them for $210,000.

The trial court found, in effect, with other facts, these: The defendant John Strong, on November 13, 1899, in consideration of $3,000, paid to him by the plaintiffs, agreed to sell and convey to them all the timber on the lands described in the complaint for $180,000, but, if sale of the timber was made to any one under the option alleged, the plaintiffs were to receive the one-half of $37,000. The defendant Strong was not authorized to make such contract on behalf of his co-defendants. A memorandum in writing of such sale, expressing the consideration and terms of the sale, was made and signed by the defendant Strong. Mallett assigned his option, and the defendants conveyed the timber to the assignee for $210,000, as alleged in the answer. The defendant John Strong is now unable to convey any of the timber to the plaintiffs, who have duly tendered performance of all the terms of the contract on their part to be done. The sum of $18,500 became due on December 2, 1899, from him to the plaintiffs, in which sum they have been damaged by his failure to perform the contract on his part. As a conclusion of law, the trial court directed judgment for such sum against him, and in favor of the plaintiffs, and that the action be dismissed as to the other defendants. Thereupon the plaintiffs moved the court to amend its findings so as to find that the market value of the timber at the time of the breach of the contract was $210,000, and that the plaintiffs had sustained damages thereby in the sum of $30,000,

and to amend the conclusions of law accordingly. The motion was denied. Defendant Strong, hereinafter referred to as the defendant, made a motion for a new trial, which was also denied. Judgment was entered in accordance with the trial court's findings and conclusion of law, from which the plaintiffs and defendant severally appealed.

The defendant's assignments of error raise the general question whether the finding of fact of the trial court, to the effect that the defendant agreed to sell the timber to the plaintiffs, and that a note or memorandum in writing thereof was made and signed by him, is sustained by the evidence. The evidence tends to show these facts: The parties had some correspondence looking to the purchase of the timber, and on July 17, 1899, the plaintiffs wrote to the defendant Strong, stating that they had been looking over his lands, and found his timber satisfactory. They also inclosed therewith a list containing the descriptions of the lands, and asked him to check it over, and see if it was correct. They further stated that upon hearing from him they would be in a position to trade with him. The defendant, on July 26, returned the list, having made some slight corrections therein, in a letter of that date, in which he said: "We will reserve the lands; let us hear your decision soon." The list returned in this letter contained a correct description of the lands described in the complaint. In some of their letters to the defendant, the plaintiffs referred to the timber as the "Burntside Lake timber," and in others as "your timber," "your pine," "your land," while the defendant in his letters to the plaintiffs designated it as "our timber," "our pine," "our lands." On August 2 the plaintiffs wrote to the defendant that if he wanted to sell the timber and reserve the land they would figure on that basis, and suggested that they arrange to meet and talk the matter over. Further correspondence followed, which resulted in a meeting of the plaintiff Hopkins and the defendant in November, 1899, in Detroit, Michigan, when a memorandum of a contract, which was not signed by either party, was drawn up by the plaintiff Hopkins, which was as follows:

"The following is the understanding between John Strong and

Swallow & Hopkins as to the conditions of trade on the timber belonging to Strong and others in St. Louis county, Minnesota. Should Swallow & Hopkins elect to purchase after they have conferred together, viz.: The price of the timber, including the surface right to all the land at the outlet of Burntside river from Burntside Lake, is $180,000, one-third cash, one-third in one year, and one-third in two years, from December 2, 1899, with whatever time may be wanted for removing the timber from the land. Strong is to pay the taxes for 1899, which are payable in 1900, and Swallow & Hopkins after that, on each piece of land, until they surrender their right to the timber on the land. Swallow & Hopkins are to notify Strong by mail from Milwaukee on the 10th of November, 1899, whether or not they wish to purchase. If they agree to purchase, then, should Strong sell to any one else under an option given to R. D. Mallett of Duluth, Swallow & Hopkins are to have one-half of the amount sold for in excess of $180,000. If Swallow & Hopkins prefer to do so, they can take the property, and assume the option to Mallett, which is at $217,000. The deferred payments, if trade is made, are to bear interest at 5 per cent. per annum, and be payable on or before the time payment is actually required. Strong and his associates shall have the right to go on said land at any and all times, and explore for and mine iron or other ores. Should they damage or destroy any timber in such work, they shall pay for the same at its full market value. Swallow & Hopkins are to pay $3,000 cash upon the trade at the time they accept, provided they do accept the trade. If they purchase, they shall have the right to cut one-half of the timber after making the second payment."

November 10, 1899, plaintiffs telegraphed to defendant thus:

"We take your timber as agreed; letter with draft mailed to-day."

On the same day they wrote to him as follows:

"We have just wired you, 'We take your timber as agreed; letter with draft mailed to-day,'—and in accordance therewith we herein inclose draft  *  *  *  for three thousand dollars. This is the first payment on the amount to be paid down on December 2, according to the agreement made by you and Mr. Hopkins at the Cadillac hotel in Detroit, of which you have a copy. That agreement, though not signed, is effective from the time we wired. The trade is to be closed December 2, and you have the right to sell the timber under the terms of an option given R. D. Mallett, of Duluth, before December 2, at $217,000, provided, however, that if you do sell it you are to pay us one-half of the $37,000, which is the amount in excess of what we buy for, viz., $180,000. You are to furnish us an abstract showing perfect title and pay the taxes

of 1899. We will want the contract to run to George C. Swallow. You can send your abstracts to Duluth, and instruct to have them carried down to date, or to us, and we will have it done and charge you with the costs. We will draw the papers, unless you prefer to, and submit the same to you. At present, we prefer that nothing shall be said about the trade, as we have other trades under way, and the price we pay you is relatively much higher than we have paid, or expect to pay, and knowledge of this might affect them, to our detriment. We will probably want to make the consideration in the contract less than the actual amount, though that can be determined later."

In answer to this letter, the defendant sent to the plaintiffs a letter signed by him, which was as follows:

"Your wire and letter of 10th at hand, accepting sale of our pine, and inclosing N. Y. draft for $3,000 to apply on the first payment to be paid down. I will have the papers made in due time. I will not mention the sale to outside parties. The sale will not be known from us in Minnesota. Have not informed Mr. Mallett that you were negotiating for the property,"

—to which he added a postscript that deed would be made to George C. Swallow. The evidence also shows that at this time R. D. Mallett, mentioned in the correspondence between the parties, held an option for the purchase of the timber in question for $217,000; that he assigned his rights to Mitchell & McClure, and thereupon the timber was conveyed to them by defendant and his associates for the sum of $210,000.

1. The serious question in this case is whether the correspondence and memorandum we have referred to constitute a sufficient memorandum of a contract for the sale of the timber in question to satisfy the statute of frauds. The memorandum of a contract for the sale of land, or an interest therein, to satisfy the statute of frauds, may consist wholly of letters, if they are connected by reference, expressed or implied, so as to show that they all relate to the same subject-matter. This relation cannot be shown by parol, but it must appear upon the face of the letters, from the nature of their contents, or by express reference. Sanborn v. Nockin, 20 Minn. 163 (178); Tice v. Freeman, 30 Minn. 389, 15 N. W. 674. Such memorandum, whether it consists of a single writing or several, must express the substance of the contract and its

terms with reasonable certainty. While parol evidence is admissible to apply its terms or to identify its subject-matter, it is not admissible to add to the terms of the sale, or supply the subject-matter thereof; for the memorandum must contain sufficient particulars to point out the land and the terms of its sale. It is not, however, essential that the land should be described with precision, if the writing is on its face an adequate guide to find it. George v. Conhaim, 38 Minn. 338, 37 N. W. 791; Nippolt v. Kammon, 39 Minn. 372, 40 N. W. 266; Burgon v. Cabanne, 42 Minn. 267, 44 N. W. 118.

2. Counsel for defendant contend that the memorandum and correspondence are not sufficiently connected to allow them to be construed together, and are too indefinite and uncertain, both as to the terms and subject-matter of the sale, to satisfy the statute of frauds, within the rules we have stated. We are of the opinion, and so hold, that they are connected by mutual reference so as to show that they all relate to the same subject-matter; that is, to the timber on the lands described in the list which was inclosed with, and was a part of, the defendant's letter of July 26, 1899. It is reasonably clear that the designation of the timber as "your timber," "our timber," "your pine," "our pine," "the timber belonging to Strong and others," in the correspondence and memorandum, refers to the timber on the lands described in the list. It appears on the face of the writings that the parties well understood that it was this timber they were negotiating for, and that it described it with sufficient certainty. Sanborn v. Nockin, supra.

3. It is further claimed that the letters and memorandum were not intended to be a complete contract, and that they are indefinite, and show on their face that an agreement had not been reached on all points. The fact that the writings contemplated the execution of a more formal contract,—a deed,—does not render them incomplete or insufficient as a note or memorandum of the contract of sale, nor does it show that the parties had not definitely agreed upon the terms of the sale and purchase of the timber. It is clear that the parties did not intend that a formal deed should be given before the expiration of the Mallett option;

hence the statement in defendant's letter that the deed would be made to George C. Swallow does not propose any change in the terms of the contract. The unqualified acceptance in writing of $3,000 by the defendant to apply on first payment on the purchase price of the sale of the pine was an acceptance of the terms of the contract as stated in the plaintiffs' letter in which the money was sent. Therefore it is immaterial whether or not the terms so stated differed in any essential respect from those contained in the memorandum. It is also urged that the provisions of the contract as to the surface right to all of the land at the outlet of Burntside river from Burntside lake, as to mineral rights reserved by the defendant, and as to the payment of taxes, render the contract void for uncertainty. We have considered each of these objections, and reached the conclusion that none of them renders the contract void.

4. It is also urged by the defendant that it appears upon the face of the letters and memorandum that he had no intention of binding himself personally, but that he was a mere agent for others. The writings, considered and construed as a whole, show upon their face with reasonable certainty that the defendant personally undertook and agreed to sell certain timber belonging to himself and undisclosed associates; hence as to the plaintiffs it was his own personal contract. It was sufficiently pleaded as such in the complaint, which expressly alleged that the defendant John Strong, in his own behalf, promised and agreed in writing to sell the timber; that is, the whole of it, not simply his interest in it. It is true that the complaint also alleges that his codefendants, by and in his name, also agreed to sell the timber, but this allegation in no manner modifies the express averment that the defendant in his own behalf made the contract.

5. Again, it is urged that there was a failure of proof as to the allegations of the complaint. This is true only as to the allegation that the defendants, other than Strong, also made the contract. This failure, and the fact that the timber had been sold to third parties, rendered specific performance of the contract impossible; but it in no manner affected the plaintiffs' right to such relief against the defendant by way of compensation in money,

as the allegations of the complaint and the proofs justified. The court, having jurisdiction of the parties and the subject-matter of the action, could award payment of such compensatory damages as were by the pleadings and the evidence shown to be just. We hold that the facts found by the trial court are sustained by the evidence.

6. This brings us to the question of damages. The plaintiffs claim that they are entitled to the difference between $180,000, the price they agreed to pay for the timber, and $210,000, the price for which it was sold by the defendant and associates, for the reason that the defendant had no right to sell under the option for a less sum than $217,000, but, having done so, they are entitled to the whole profit. On the other hand, the defendant claims that in no event are the plaintiffs entitled to any greater sum than $15,000; that is, one-half of the difference between the purchase price and the sum actually received for the timber on the sale under the option. Neither of these claims is correct. The plaintiffs correctly interpreted the contract in their complaint by the allegations to the effect that it was further agreed in and by the contract that, should the defendants sell to any one else under an option theretofore given to a third party, the plaintiffs were to receive one-half of $37,000, which was the difference in amount between the price to be paid for the timber by the plaintiffs and the amount of the option. This is the proper construction of the contract. The parties expressly stipulated as to the amount to which the plaintiffs should be entitled in case the timber was sold by the defendant under the then outstanding option. As between the parties, it mattered not whether the timber was sold for more or less than $217,000; for, in any event, this sum was to be considered as the purchase price under the option, for the purpose of fixing the amount these plaintiffs were entitled to receive. Each party claims an estoppel on this question of damages as against the other, arising from certain representations by the defendant as to the option, and by the plaintiffs as to the amount of pine on the lands. Neither the findings of fact nor the admissions in the pleadings afford any substantial basis for the claim of either party. If the evidence was such as

to justify a finding of fact from which the conclusion would follow that either party was estopped as claimed, the remedy was to move for such additional finding.

7. Errors are assigned as to the rulings of the trial court as to the admission of evidence. The letter of the defendant to his attorney, in which he admitted that he had sold the timber, was immaterial, but its admission in evidence was harmless error, for it is in no manner essential to the proof of the contract for the sale of the timber made before this letter was written.

Other assignments of error not specifically referred to have not been overlooked, and upon the whole record we are of the opinion that the judgment must be affirmed upon both appeals. So ordered.