GEORGE WELSH v. A. E. BRAINERD and Others.[1]

June 16, 1905.

Nos. 14,382—(113).

**Statute of Frauds.**

The memorandum required by the statute of frauds may consist wholly of letters and telegrams, if they are connected by reference, express or implied, so as to show on their face that they all relate to the same subject-matter. Swallow v. Strong, 83 Minn. 87, followed.

**Memorandum.**

*Held,* the facts of this case are within the rule.

Action in the district court for Renville county to enforce specific performance of a contract made by defendant Brainerd for the sale of land of plaintiff and to charge the land—which was afterwards purchased by defendant D. L. Crimmins with notice of plaintiff's contract and by him sold to defendant Dworshak with like notice—with a trust for the benefit of plaintiff; and for other equitable relief. The case was tried before Powers, J., who found in favor of plaintiff. From a judgment entered pursuant to the findings, defendant Crimmins appealed. Affirmed.

*John Lind* and *A. Ueland,* for appellant.

*John A. Dalzell* and *W. A. McDowell,* for respondent.

LEWIS, J.

Defendant Brainerd resided in the state of Iowa, and was the owner of the southeast quarter of section 4, town 113, range 35, Renville county. March 4, 1903, he wrote to one Martin at Beaver Falls, Minnesota, who had been his general agent in that locality, requesting him to pay taxes upon his land, describing it, and also to dispose of some grain then on the farm. This letter was followed by another of date March 20, 1903, in which Brainerd referred to the former letter, stating that he had not received an answer; asked if the grain had been sold and the taxes paid; and stating that he had been offered $5,500 for his farm, and asking if Martin would advise selling at that price. March 23, Brainerd wrote the following letter:

[1] Reported in 103 N. W. 1031.

Mr. Geo. Martin,

     Kind Sir:

Although I wrote you a few days ago I wish to write you today and get more fully your opinion about the price of my farm. I see after figuring on the question of the $5,500 for my farm that the $5,500 is only a little over 34½ pr. acre and don't you think it is worth more than that? So while you have been so kind to help me about my business up there that I would make you an offer or propose to you what I will do. If you will sell my farm for $36 pr. acre I will give you $50 and pay you out of the first payment, if you can't get all down I will take one half down and the balance on reasonable time, with the customary security. With annual payments and interest. Our interest here on farms and money loaned is seven pr. cent annually. Please let me hear from you as soon as possible as I wish to write to these other parties so if any one wishes to get one of the best farms in that neighborhood now is the time, for if my health improves as I can attend to it I will not sell. Please keep all this letter to yourself.

               Yours as ever,

                 A. E. Brainerd.

March 28 plaintiff offered Martin $36 per acre for the farm, and Martin said "All right," but told him he would have to deposit money in the bank at Redwood Falls to bind the bargain, and then wrote the following telegram, which he handed plaintiff, who immediately sent it to Brainerd:

                           March 28, 1903.

Have sold farm to George Welsh $36 an acre, as per your letter. Money deposited First National Bank, Redwood Falls. Wire acceptance.

                      George Martin.

Brainerd's reply was:

     I accept of your transaction—thanking you heartily; write me.

On the same day plaintiff sent this telegram he deposited $200 earnest money in the bank, as suggested. Before receiving the telegram announcing the sale to plaintiff, Brainerd, March 27, had written Martin, but the letter had not been received by him at the time of his negotiations with plaintiff. In this letter Brainerd urged Martin to sell the farm at $36 an acre, suggesting he ought to get that price by figuring with the different prospective buyers, and that the purchaser must make a deposit in the bank of from $200 to $500 to bind the bargain, and offering Martin $50 commission if he should get this price. It was also stated in this letter that the purchaser must not disturb the tenant until he got his crop off, when immediate possession could be given. March 31 Martin executed a proper contract of the premises to plaintiff, which recited the terms of the sale, and contained a description of the premises, and in all respects complied with the requirements of the statute of frauds; but the contract was dated back to March 28, to correspond with the date of negotiations,

In the the meantime defendant D. L. Crimmins, the appellant, who claimed to have purchased the farm from Martin at the same price, proceeded to Iowa, and succeeded in securing a warranty deed from Brainerd, which, at the trial, plaintiff undertook to show had been secured from Brainerd under false representations by appellant to the effect that he was in fact the actual buyer with whom Martin was dealing.

The court having found that plaintiff was entitled to specific performance, appellant presents for the consideration of this court the question whether the correspondence already referred to constituted a contract or memorandum of agreement with respect to the sale of real estate, such as required by the statute of frauds; and, inasmuch as we find against appellant upon this point, it will not be necessary for us to review the other assignments.

It was shown at the trial by parol testimony that the original letter of March 4 was lost, which contained a description of the land. The testimony came in without objection, and we are not at liberty to consider the question suggested at the argument whether or not the contents of the memorandum required by the statute of frauds may be shown by parol testimony when the original has been lost. The identity of the land having been thus established, the correspondence and

telegrams together certainly make out a contract of purchase and sale, such as would bind the vendor, and is within the provisions of the statute of frauds. Such a memorandum may consist wholly of letters, if they are connected by reference, express or implied, so as to show on their face that they all relate to the same subject-matter. Swallow v. Strong, 83 Minn. 87, 85 N. W. 942. The nature of the contents of these letters and telegrams indicates that they all refer to the same subject, viz., the sale of the premises described in the first letter. The telegram of March 28 was sent by Martin to the owner after receipt of the letter of March 23, specifically authorized him to sell the property at the price mentioned, $36 per acre; and when Martin wrote out the telegram, giving it to plaintiff to send to Brainerd, it was a sufficient notice to the owner that his property had been sold to plaintiff; and although the telegram implied, by asking for an acceptance, that the proposition was still open for Brainerd to accept or reject, all uncertainty was removed by his reply which accepted the terms.

Appellant cannot take advantage of the fact that there was uncertainty about the amount of money deposited in the bank. As appears from his letter of March 27, although not yet received by Martin, the answer had already suggested that a deposit of that amount be made to bind the bargain. The negotiations became complete upon receipt of the telegram of March 29 from Brainerd. This telegram refers to a previous one, in which it was stated that the sale had been made to plaintiff, and that telegram referred to the letter immediately preceding it, which contained the authority and named the purchase price, and that letter referred to the former one, which definitely fixed the description of the property, so that, when all are considered together, it appears that a contract for the sale of the farm to plaintiff was in writing, that it expressed a consideration, and was executed by the vendor. This established the prior rights of plaintiff, and we need not consider the effect of the subsequent writing executed March 31. Conceding appellant was acting in good faith in securing a deed from Brainerd, he acquired no rights as against plaintiff.

Judgment affirmed.