## DAVID SANFORD v. GEORGE C. FLINT.[1]

· July 16, 1909.

Nos. 15,937—(1).

**Attorney and Client.**

The plaintiff claimed title to the land here in question by adverse possession; but the defendant claimed that the plaintiff was under disability

[1]Reported in 122 N. W. 315.

so to assert title thereto by reason of his relations as attorney to former owners of the land, through whom the defendant claimed title. *Held*, the obligation of fidelity which an attorney owes to his client is a continuing one, and he cannot make use of any knowledge acquired through his client, or through his professional relations, for his own advantage, adverse to the interests of his client or those claiming through him, even after the confidential relations have ceased.

**Adverse Possession — Findings.**

The findings and decision of the trial court that the plaintiff was not under such disability, and that he had acquired title to the land by adverse possession, are sustained by the evidence.

Action in the district court for Ramsey county to determine adverse claims to a certain strip of land. The case was tried before Hallam, J., who made findings and ordered judgment in favor of plaintiff. From the judgment entered pursuant to the order, defendant appealed. Affirmed.

*W. H. Yardley,* for appellant.

*F. W. Zollman,* for respondent.

START, C. J.

Appeal by the defendant from the judgment of the district court of the county of Ramsey in this an action to determine adverse claims to the land described in the complaint. The subject-matter of the action is a portion of lot 3, in block 28, of Kittson's addition to St. Paul, consisting of a strip of land 6.2 feet wide on the front and 9.35 feet wide on the rear, and lying alongside of lot 4 in the same block. The record title to lot 3 is in the defendant, Flint, and that of lot 4 in the plaintiff, who claimed title to the strip in question by adverse possession. The trial court found that the plaintiff had been in the actual, open, hostile, and adverse possession of the strip for more than fifteen years next before the commencement of the action, and as a conclusion of law that he was entitled to judgment that he is the owner of the land in fee simple and that the defendant has no title to or interest therein.

The defendant's assignments of error raise the question whether the trial court's finding of fact on the issue of adverse possession is sustained by the evidence. The evidence is practically conclusive

that the plaintiff was in the actual possession of the land for more than fifteen years, claiming to be the owner thereof; but it is the contention of the defendant that the plaintiff was under disability to acquire or assert title thereto in himself by adverse possession, by reason of his relations as an attorney with the former owners of the land, through whom the defendant claims title. It is well settled that the obligation of fidelity which an attorney owes to his client is a continuing one, and that he cannot make use of any knowledge acquired from his client, or through his professional relation, for his own advantage, adverse to the interests of his client, or those claiming through him, even after the confidential relations have ceased.

It is here urged on the part of the defendant that the undisputed evidence brings this case within the rule stated; hence the finding of fact as to the plaintiff's adverse possession is wholly unsupported by the evidence. The record does not sustain this contention. It may fairly be inferred from the evidence that the adverse possession of the plaintiff had its inception in a mistake as to the true boundary line between lots 3 and 4. The evidence shows that the plaintiff acted at different times from 1859 to 1886 as attorney of the respective owners of the lots; that such services consisted in foreclosing a mortgage on the lots in 1859, in probating the will of the person who died seised of the lots in 1867, whereby the title thereto was vested in the daughter of the testator, Mrs. Murphy, in renting the property, preparing leases therefor, and collecting the rents from 1883 to 1886, and in conducting an action to quiet her title to the lots in 1885. Such, in brief, was the general character of the services rendered by the plaintiff to the several owners of the lots. The last service was the preparation of a deed in 1886 whereby Mrs. Murphy conveyed lot 4 to the plaintiff's grantor, who conveyed it to the plaintiff in 1887, when he went into possession thereof.

The record discloses no evidence that the plaintiff was ever consulted, as an attorney or otherwise, in reference to the boundary line between the lots by any owner of the land; nor is there any evidence tending to show that in purchasing lot 4 and going into possession thereof, including as a part thereof the strip of land here in question, he violated his duties or obligations as an attorney to any of the former owners of the land. The fact that he acted as attorney for

108 M.—26.

them in matters wholly disconnected with the boundary line, a matter which did not arise until after he ceased to be their attorney, did not preclude him from subsequently acquiring title to the strip of land here in dispute by adverse possession. The fact that a lease of the southerly thirty feet of lot 4, and running back to the fence the whole width of the lot, was made and executed in 1883 by the plaintiff for the then owner thereof, is not particularly significant, either in itself or in connection with other leases; for at this time no controversy had arisen as to the true boundary line between the lots.

We are of the opinion that the evidence amply sustains the findings and decision of the trial court.

Judgment affirmed.