## THE GREGORY COMPANY v. MAX P. SHAPIRO.[1]

February 27, 1914.

Nos. 18,406—(237).

**Statute of frauds — description of land sold.**

1. A contract for the sale of lands, to be valid within the statute of frauds, must describe them with reasonable certainty; but they may be described by reference from one writing to another.

**Same — contract of sale — vendee's signature unnecessary.**

2. Under the statute of frauds, R. L. 1905, § 3488 (G. S. 1913, § 7003), relative to the sale of lands, only the vendor need sign the contract; and if signed by the vendor and accepted by the vendee the contract is enforceable at the suit of the vendor.

**Specific performance — consideration.**

3. The defendant conveyed a one-fifth interest in a state mining lease to the plaintiff, both signing the agreement. The plaintiff, as a part of the agreement, signed and delivered to the defendant a writing which provided that, under certain conditions, the defendant might take back one-half of what he had conveyed, within six months, or that the plaintiff, under the same conditions, and within the same time, might require him to take it back. It is *held* that there was a sufficient consideration to support the agreement;

[1] Reported in 145 N. W. 791.

125 M.—6.

that the defendant was bound by it, though he did not sign it; that there was no lack of mutuality preventing the enforcement of the contract; and that, there being nothing inequitable in the transaction, the contract should be specifically enforced.

**Assignment of state mining lease.**

4. R. L. 1905, § 2493 (G. S. 1913, § 5317), providing for the manner of execution of an assignment of a state mining lease is not a statute of frauds: and contracts relative thereto, observing in their execution the requirements of contracts for the sale of lands, are valid between the parties to them.

**Enforceable agreement.**

5. The provision of the agreement recited in paragraph three requiring the defendant, at the election of the plaintiff, to take back one-half of what he conveyed is enforceable, though the election was to be made within six months, and though the defendant might defeat the right of election by purchasing a one-fifth elsewhere within that period, the intent of the parties being clear notwithstanding the technical inconsistency of the provisions relative to repurchase and sale.

**Evidence.**

6. Under the findings and the evidence the defendant did not purchase a one-fifth interest and thereby defeat the plaintiff's right of election.

Action in the district court for Itasca county. The facts are stated in the opinion. The answer expressly denied that defendant ever executed or delivered any contract agreeing that plaintiff might elect that defendant should take a part of the one-fifth interest in a certain state mineral contract. The case was tried before McClenahan, J., who made findings and ordered judgment that defendant pay to plaintiff $5,200 and interest, and that upon such payment defendant should be entitled to receive an assignment of one-tenth interest in the mineral contract or lease, and ordered judgment accordingly. From the judgment entered pursuant to the order for judgment, defendant appealed. Affirmed.

*W. G. Bonham,* for appellant.

*Alderman, Mantor & Ebner* and *Leon E. Lum,* for respondent.

DIBELL, C.

This is an action for the specific performance of a contract whereby the defendant agreed to repurchase, at the plaintiff's election, a one-

half of one-fifth interest in a state mining lease which one-fifth was at the time conveyed by the defendant to the plaintiff. There was judgment for the plaintiff and the defendant appeals.

On June 4, 1908, the plaintiff and the defendant entered into an agreement signed by both whereby the defendant conveyed to the plaintiff a one-fifth interest in a state mining lease covering lands in Itasca county. This was all the interest he had. The money consideration was $10,400 then paid by the plaintiff to the defendant. Concurrently with the execution and delivery of this conveyance, and as a part of it, the plaintiff executed and delivered to the defendant a paper, signed by itself only, in the following language:

"Whereas Max P. Shapiro has this day sold to The Gregory Company an undivided one-fifth of state lease number 282, covering the northeast quarter of the northwest quarter and south half of the northwest quarter, section 23, 57–22, in St. Louis county, Minnesota, with the expectation that he will be able to buy another fifth at the same or less price.

"Now, therefore, if said Shapiro fails within six months to obtain such other one-fifth, he may elect to take, or The Gregory Company may within the same time elect that he shall take, at the same price paid, to-wit: $5,200, with interest at 6% per annum after the date hereof, an undivided one-half of said one-fifth, so that thereafter said parties will own said one-fifth jointly."

This instrument, which we conveniently refer to as the option agreement, is the one which the plaintiff seeks specifically to enforce by requiring the defendant to take back one-half of the one-fifth, it having made its election that he do so within the six months specified.

The defendant claims: (1) That the option agreement is invalid within the statute of frauds because of an insufficient description; (2) that it is invalid within the statute of frauds as against the vendee because not signed by him; (3) that it will not be enforced because of want of consideration, and lack of mutuality, and because its enforcement would be inequitable; (4) that R. L. 1905, § 2493 (G. S. 1913, § 5317), relative to the assignment of state leases, which it is claimed is a statute of frauds, was not complied with, and the agreement is therefore void; (5) that it gives no available right to the

plaintiff, since its right of election expired at the identical moment of the expiration of the right of the defendant to purchase a one-fifth and thereby defeat its election; and (6) that the defendant purchased a one-fifth within six months, as provided in the agreement, and that thereby he defeated the plaintiff's right to elect that he take back one-half of the one-fifth.

1. A contract or memorandum of the sale of lands, to satisfy the statute of frauds, must describe them with reasonable certainty. The description cannot be supplied by parol. It may appear from separate writings. The connection between the writings must appear by the writings themselves and cannot be shown by parol evidence of what the parties intended. Tice v. Freeman, 30 Minn. 389, 15 N. W. 674; Ferguson v. Trovaten, 94 Minn. 209, 102 N. W. 373. Delivery and receipt may be shown by parol. "Parol evidence, showing the fact of the delivery and receipt of the several writings, including time, place, situation of property and parties, and other circumstances, may be received to aid in the interpretation. * * *" Tice v. Freeman, 30 Minn. 389, 15 N. W. 674. The contemporaneous delivery and acceptance of the agreement conveying the interest in the mining lease and the option agreement are found by the court. The option agreement on its face shows its connection with the agreement conveying the mining lease. It is true that the township and range are stated in abbreviated form, and the land is described as being in St. Louis county. The reference to the land as being in St. Louis county is unimportant. If the description of the land as being in "section 23, 57–22" is defective, it is made good by the reference to the mining lease. The option agreement refers to "state lease number 282." This is the lease described in the conveyance as "state mineral contract numbered 282," and the conveyance describes the particular lands. The state mining lease is not in evidence. There is no mistaking that the option agreement, on its face, refers to the agreement of conveyance, and by such reference all uncertainty of description is removed. Besides, parol evidence is admissible for the purpose of applying or identifying descriptions. Ham v. Johnson, 51 Minn. 105, 107, 52 N. W. 1080; Tice v. Freeman, 30 Minn. 389, 15 N. W. 674; Quinn v. Champagne, 38 Minn.

322, 37 N. W. 451; St. Paul Land Co. v. Dayton, 42 Minn. 73, 43 N. W. 782. We are not required to hold that the reference to "57–22" after a given section is an insufficient description, nor that a description by the number of the mining lease is not sufficient. Assuming that both such descriptions are defective, the defective description is made definite and sufficient by reference to the instrument of conveyance. It is not important that the option agreement is not dated. It refers to the conveyance of even date. Besides, the date of delivery, if there were nothing else, would fix the rights of the parties.

2. The fourth section of the English statute of frauds provided that no action should be brought "upon any contract or sale of lands, tenements or hereditaments, or any interest in or concerning them; * * * unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized." 29 Car. II. c. 3, § 4. The corresponding section of our statute provides that a contract for the leasing or sale of lands "shall be void unless the contract, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party by whom the lease or sale is to be made, or by his lawful agent thereunto authorized in writing." R. L. 1905, § 3488 (G. S. 1913, § 7003). The statute is satisfied if the vendor signs the contract, and it is then enforceable against the vendee if accepted by him, though not signed. Western Land Assn. v. Banks, 80 Minn. 317, 83 N. W. 192. "A contract for the sale of land cannot rest partly in writing and partly in parol. It is not, however, necessary that the written contract be signed by the purchaser. It is sufficient if it is signed by the vendor, delivered to the purchaser, and accepted by him." Wilson v. Hoy, 120 Minn. 451, 139 N. W. 817. And in Lowber v. Connit, 36 Wis. 176, involving a like statute, the court said: "The signature of the party who makes the sale satisfies the statute. But then the question arises whether the contract signed and delivered by the plaintiffs (vendors), and accepted and adopted by the defendant (vendee) as the agreement between them, binds the latter. This can hardly be said to be an open question * * * ." We understand it to be the settled law of this

state, and of other states having a like statute, that a contract for the sale of lands, signed by the vendor alone, is valid within the statute of frauds and may be specifically enforced by the vendor. This may not be the law generally prevailing in states adopting the English statute.

3. We have then presented this unusual but not difficult situation: Shapiro sold his interest in the lease to the Gregory Co. and received for it $10,400 with the right, under certain conditions, to take back one half of it for $5,200, and subject to the right of the Gregory Co., under like conditions, to require him to take it back. There is no real question of a want of consideration. Consideration permeates the whole transaction. There is no important question of want of mutuality. Shapiro paid for the right to take back one-half. The Gregory Co. paid for the right to require him to take back one-half. Such situations, resembling options before the election is made, present no difficulty. 6 Pomeroy, Eq. Jur. § 773; 2 Warvelle, Vendors, § 739; 3 Columbia Law Rev. 1. The absolute part of the contract furnishes a consideration for the optional part. Staples v. O'Neal, 64 Minn. 27, 65 N. W. 1083; Ellsworth v. Southern Minn. Ry. Ex. Co. 31 Minn. 543, 18 N. W. 822. There is nothing inequitable in granting specific performance. No one is required to do more than he agreed to do and no one is getting more than it was agreed that he should have. "The doctrine of this court is that, if a contract for the conveyance of real estate is supported by a valid consideration, and there is no other good reason why it should not be specifically enforced except the want of mutuality of remedy, it will be so enforced." Lamprey v. St. Paul & Chicago Ry. Co. 89 Minn. 187, 94 N. W. 555.

4. The defendant contends that the option agreement is invalid because of the requirement of R. L. 1905, § 2493 (G. S. 1913, § 5317), that an assignment of a mining lease "shall be signed by both parties, executed in the presence of two witnesses, and acknowledged, and the approval of the auditor shall be indorsed thereon." This section is not a statute of frauds. It was not intended by it to make invalid between the parties contracts relative to the species of property evidenced by a state mining lease, when executed conformably

to the requirements of contracts relative to real property. We do not construe it further.

5. It is urged that the provision that the defendant take back one-half of the interest conveyed, at the election of the plaintiff, is unavailing. The specific point is that the right of election given the plaintiff became effective only if the defendant failed to purchase a one-fifth within·six months and that at the moment when this period of six months expired the plaintiff's six months expired, the two periods being coterminous. The contention is, using the words of the defendant's brief, that "at the precise instant at which the right became vested in Gregory Co. it vanished." We have given this argument sympathetic consideration but it fails to persuade us. The parties intended something. They were engaged in an· ordinarily serious business affair. They did not intend an absurd result or no result. The law is practical and it does not permit an observance of grammatical niceties to defeat the intent of the parties. It is impossible to misinterpret the meaning of the writing, though a critical mind at once notes its faulty phrasing. It was intended that the defendant should have the right to take back one-half if he did not purchase elsewhere and that the plaintiff should have the right to require him to do so, the right of either to be exercised within six months. The agreement is subject to a practical working construction. Such a construction was given.by the trial court in the language which follows:

"Subject to the power vested in the defendant to control or prevent the right of election by obtaining another one-fifth interest, or to defeat an election made by the plaintiff by the exercise of such power within the time limited, the only construction that will make this entire agreement effective and valid is that the parties thereto intended to create a mutual right of election within the six months period, that is to say, either could then notify the other of an election that the one-fifth interest held by the plaintiff was to be divided on the terms expressed; either could have done this at once, but such action by the plaintiff would have been rendered abortive had the defendant acquired the other fifth interest before the expiration of the six months."

6. Lastly, the defendant claims that he purchased a one-fifth within the six months and thereby defeated the plaintiff's right of election. He purchased a one-fifth interest from one Stein. The court finds that this purchase was colorable. The finding is justified. When the defendant purchased from Stein an option was given Stein to take the property back within six months. It was taken back. This was not such a purchase as the contract contemplated. It was intended that the plaintiff and the defendant should have equal interests, either a one-tenth each or a one-fifth each. We are not concerned with the situation which would have arisen had Shapiro made an actual purchase of a one-fifth and transferred it within six months.

Judgment affirmed.