## Carl O. Youngquist, Appellee, v. Daniel G. Hunter, Saline M. Hunter and Nels J. Johnson, Appellants.

### Gen. No. 27,825.

1. ATTORNEYS AND COUNSELORS—*liability of attorney for conspiracy to defraud client.* Breach of an attorney's duty to a client is shown where it appears that the relationship of attorney and client had existed for many years, that to· enable the client to complete an exchange of property the attorney loaned him money, taking his note therefor secured by a pledge of another note as collateral, that the note was thereupon discounted by the attorney to a bank, that thereafter such attorney was employed to and secured two extensions thereon for the client and was employed to procure a third extension which the bank was unwilling to give, that a sale of the collateral was advertised by such bank and that the attorney, notwithstanding his employment by the client to bid in such collateral note, conspired with the makers thereof to permit them to buy it in for the amount due on the principal obligation, which was less than one-fourth the amount due on the collateral. and loaned them money to make the purchase and shared in the profits of the transaction.

2. ATTORNEYS AND COUNSELORS—*effect of severance of relation on duty of good faith to client.* The burden of severance of the fiduciary relationship of attorney and client from transactions in which the attorney has a personal interest is upon the attorney, and the rule binding him to the strictest good faith in his dealings with a client is applicable, even though the relationship may have ceased, if the client continues to act under the influence of such relationship, and the attorney is liable under such circumstances for his wilful neglect to protect the client's interest at an involuntary sale of the client's property which he was employed to but did not bid in at such sale because of his participation in a conspiracy to deprive the client of his property by means of such sale.

3. EQUITY—*jurisdiction to afford pecuniary relief only.* Equity has jurisdiction of a proceeding by a client against an attorney for the recovery of property lost to the client through the attorney's breach of duty to the client and his conspiracy to profit at the client's expense in dealings wherein he represented the client, although pecuniary relief only is sought.

4. CONSPIRACY—*dismissal as to part of defendants as affecting liability of others.* In a suit by a client against his attorney and others to recover property which the defendants secured from him

as a result of a conspiracy, the fact that the suit is dismissed as to certain of the defendants does not deprive plaintiff of the right to a decree against the other defendants where the conspiracy is found as to them and they profited therefrom.

5. DAMAGES—*when face and not market value of note is measure of damages.* In an action by a client against his attorney and others to recover the value of a note which the client had pledged with his attorney as collateral security for a personal loan from the attorney, the face and not the market value of the collateral note fixes the basis for the amount of recovery where it is shown that the attorney has conspired with the makers thereof to buy it in for less than its face value at a sale thereof to enforce the client's note to the attorney, by the bank with which such latter note had been discounted, since the amount due on the collateral note less the debt it was given to secure, is prima facie the measure of damages.

6. FRAUD AND DECEIT—*estoppel to urge fraud as defense by acquiescence therein.* In a suit against plaintiff's attorney and the makers of a promissory note which plaintiff had received from such makers on an exchange of land and which he had pledged with his attorney as collateral security for a loan and of which he was deprived as the result of a conspiracy between his attorney and the makers of such note and others, the makers cannot defend on the ground of failure of consideration for such note because of plaintiff's misrepresentations as to the value of the land traded to such makers by him, where they disposed of the land without attempting to rescind the exchange, and with knowledge of the facts and of the legal effect thereof they purchased the note in question pursuant to the conspiracy.

7. JUDGMENTS—*when adjudication of title is not conclusive.* In an action against the makers of a note pledged as collateral by plaintiff and of which he was deprived as the result of a conspiracy between the makers thereof and their codefendants, it is not error to refuse to permit the makers to amend their answer by pleading a decree in foreclosure in which another than plaintiff was held to be the legal owner and holder of such note, where there was no surplus on such foreclosure sale and no adjudication as between plaintiff and the other as to their respective rights in such note.

8. EQUITY—*laches.* The owner of a note which had been pledged as collateral with the owner's attorney and which, as the result of a conspiracy between the attorney and the makers of such collateral note, was lost to the owner on a sale thereof, is not guilty of laches in delaying a year and a half after such sale in bringing suit against the conspirators for the value thereof.

Youngquist v. Hunter et al., 227 Ill. App. 152.

Appeal by defendants from the Circuit Court of Cook county; the Hon. IRA RYNER, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1922. Affirmed. Opinion filed December 5, 1922. Rehearing denied December 18, 1922. *Certiorari* denied by Supreme Court (making opinion final).

JOHN H. HILL and NELS J. JOHNSON, *pro se,* for appellants; CHARLES P. R. MACAULAY, of counsel.

WINTERS, PRICE & STEVENS, for appellee; GEORGE M. STEVENS, JULIAN CLAY RISK and MELVIN L. GRIFFITH, of counsel.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

Appellee filed his bill in chancery against the above-named appellants [Daniel G. Hunter, Saline M. Hunter and Nels J. Johnson], and one Lindgren and the Union Bank of Chicago, charging a fraudulent conspiracy whereby appellee was deprived of his property in a note for $10,500 signed by appellants, Daniel G. Hunter and Saline M. Hunter, his wife. The bill prayed for a disclosure by defendants of the part they took in the transaction, an accounting, that defendants be required to pay the amount found to be due therefrom, and for general relief. Lindgren died before the trial and was dismissed out of the case, as was also the bank. The other defendants took issue on the charge of fraud and conspiracy and some minor facts.

The decree found that defendants, Daniel G. Hunter and Nels J. Johnson, conspired to cheat and defraud complainant out of his rights in and to said $10,500 note, and to convert the same to their own use, and that while Saline M. Hunter was not implicated in the conspiracy she, as one of the makers of the note, profited and benefited by their wrongful and fraudulent acts to the damage of complainant in the sum of $12,100, which the above-named appellants were ordered to pay to complainant.

We deem it unnecessary to set forth the specific averments in the pleadings, or to review the evidence upon which the decree is based. It is sufficient to say that after a careful analysis of the same we think the evidence sustained the necessary averments of the bill and findings of the decree. In substance the court's findings are as follows:

For some years prior to December 13, 1915, appellant Johnson had acted as Youngquist's attorney and counselor in various transactions and it was by reason of that confidential relationship Youngquist sought his aid and advice respecting the subject-matters of this suit.

In an exchange of real estate between Youngquist and the Hunters on or about February 13, 1914, Youngquist became the owner of a promissory note for $10,500, signed by the Hunters, made payable to their order, indorsed by them and secured by a trust deed to appellant Johnson. To carry out the exchange Youngquist procured a loan from Johnson of $2,400, giving his note therefor, due in one year, and putting up as collateral thereto said $10,500 note and trust deed. Johnson procured its discount at the Union Bank of Chicago on indorsing it and guaranteeing its payment. When it matured Youngquist was unable to pay it and sought Johnson's aid in getting it extended. There were unpaid instalments of interest on the $10,500 note which Youngquist requested Johnson to collect, that he might apply them on the $2,400 note, and repeatedly requested him to collect the same up to the time of the sale of said collateral. Johnson's friendly relations with the bank enabled him to procure two extensions. Upon each renewal a new note in the same form for the same amount, indorsed by Johnson, was given. For obtaining these renewals Youngquist paid Johnson altogether about $500. When the last renewal note fell due Youngquist, being still unable to meet it, requested Johnson to obtain a

further extension. Johnson was uncertain whether he could, but suggested he might for a further commission, and complainant gave him $10, all the money he had at that time, on the understanding that Johnson would try to obtain it. But the bank insisted on payment, gave due notice to all parties in interest and advertised the collateral note for sale, at which Johnson, Lindgren and Daniel G. Hunter were present, the two former being the only bidders. The note and trust deed securing it were struck off to Lindgren for $2,493, the amount with interest and costs due thereon.

Prior to the sale Johnson had entered into an arrangement to loan Daniel G. Hunter $3,000, which was to be used for the purchase of said collateral at such sale. Hunter gave him his note therefor secured by a mortgage. Johnson knew, or was chargeable with the knowledge, that Lindgren was to bid in the collateral as the agent of Hunter, using the money so loaned for that purpose, and the excess of the loan over the amount paid was divided between Johnson and Lindgren as commissions.

The decree finds also that on the day before the sale, notwithstanding such previous arrangement, Johnson had agreed with Youngquist to attend the sale and bid in the collateral for him, but that he merely pretended to bid, allowing Lindgren to bid in the same, pursuant to the arrangement or conspiracy as aforesaid. For attending to the bid Youngquist had offered or was to pay Johnson $500 when the $10,500 was collected, and give him a deed to a Michigan farm as security therefor. The decree finds that by Johnson's promise to attend the sale and buy in said collateral note Youngquist was lulled into a sense of security which prevented him from obtaining some one else to attend the sale and protect his interests, and that as Johnson stood in the fiduciary relationship to Youngquist of attorney and client and knew of the proposed plan whereby Hunter was to obtain his own note for a much

lesser sum than was due thereon, and took no steps to advise Youngquist thereof or to prevent the perpetration of fraud upon him, but actually participated therein, he and the said Hunters became liable for the face value of said collateral note.

It thus appears that Johnson permitted his relation as attorney and counselor to become intermixed with personal dealings whereby he became Youngquist's creditor, and much of the argument here is an effort to draw a nice line of distinction between these two relations. It is urged that he was not acting in the capacity of attorney and counselor for Youngquist when he loaned him the money represented by the $2,400 note, that the relationship of attorney and client had ceased, and that he had a right to take such steps as he thought best to protect himself as an indorser thereon.

We need not dwell on the ethical phase of this situation. The burden of severing his fiduciary relationship from transactions in which he had a personal interest is cast upon him. (*Elmore v. Johnson,* 143 Ill. 513; *Willin v. Burdette,* 172 Ill. 117.) The evidence in this case tends strongly to show that there had been no positive act or complete case of abandonment of the relation of attorney and client, and that it was because of that relation of confidence that Youngquist sought Johnson's advice and aid in the premises up to the time the latter agreed to appear and act for him at the sale. It is said in 6 Corpus Juris, p. 689, respecting the rule which requires the utmost fairness and good faith in dealings between attorney and client: "The rule must be applied as long as the influence arising from the relationship exists, although this may extend beyond the continuance of the relationship itself. * * *" See also *Jones v. Caraway,* 205 Ala. 327, 87 So. 820.

In the case at bar, Johnson was to act for Youngquist upon the offer of remuneration, and the circum-

stances indicate that he was selected by reason of their confidential relationship and not merely because of their relation of debtor and creditor.

From the evidence adduced we find no reason to differ from the court's conclusion that up to the time of the sale there still existed a fiduciary relationship, at least the influence thereof between Johnson and Youngquist, and that his neglect to protect the latter's interests at the sale and complicity in the arrangement whereby Hunter bid in the note constituted a breach of that relation which rendered him liable for the damages to his client. The argument that he had the right to protect his own interests as indorser of the note to the neglect of Youngquist's is somewhat weakened by the fact that it was quite as easy and safe, apparently, to loan Youngquist the money to take care of the note, on the security offered by the latter, as it was to loan the money to Hunter for that purpose.

The case was first brought on the law side of the court and then transferred to its chancery side. It is contended here that inasmuch as the decree is simply for the payment of money and affords no other relief, complainant had an adequate remedy at law and a court of equity did not have jurisdiction. As the action is grounded upon fraud and a breach of fiduciary relationship "what should be the nature and extent of the redress, whether it should be wholly legal or wholly equitable, or a mixture of both, can scarcely be decided but upon a full hearing upon all the proceedings in the cause." (Story's Eq. Jur., vol. 1, sec. 66, p. 73, 13th Ed.; 21 C. J., sec. 82, p. 106.) One of the reliefs granted in cases of fraud enumerated by Pomeroy is "the affirmative relief of a pecuniary recovery where the liability arose from the fraud of the other party, and no cancellation is necessary as a foundation of the recovery." (Pomeroy Eq. Jur., sec. 872, 4th Ed.) The author also states that among the cases in which equity will administer purely pecuniary relief

are those where specified amounts of money are equitably and perhaps legally due on account of fraud. (Section 910.)

Referring to the exercise of jurisdiction in cases of a breach of fiduciary relationship, Story says: "The general principle which governs in all cases of this sort is that if a confidence is reposed and that confidence is abused, courts of equity will grant relief." (Story's Eq. Jur., vol. 1, sec. 307.) These principles are recognized in the cases of *Bunn v. Schnellbacher,* 163 Ill. 328; *Gleason & Bailey Mfg. Co. v. Hoffman,* 168 Ill. 25; *Harrison v. Tierney,* 254 Ill. 271.)

In this view of the court's jurisdiction it is immaterial that there was no other basis for an accounting than the deduction of Youngquist's indebtedness on the $2,400 note from the face value of the $10,500 note.

The contention that the charge of conspiracy failed simply because some of the parties to the bill charged therewith were dismissed out of the case is wholly untenable. The right to relief or a decree against such defendants as were found implicated in the conspiracy, and profited therefrom, is not impaired by the failure to establish the charge against others dismissed out of the case.

It is also urged that the court erred in fixing the face value of the collateral note as a basis for the amount of the recovery, that its market value should have been established, and that there was no proof thereof. Inasmuch as Johnson also stood in the relation of pledgee of said note without authority from Youngquist, the pledgor, and compromised with Hunter, its maker, for a smaller part of its face value, as was the effect of the arrangement between them, we think, in the absence of proof to the contrary—and none is shown in the record—the amount due on the collateral note, less the debt it was given to secure, is prima facie the measure of damages. (*Union Trust Co. v. Rigdon,* 93 Ill. 458.) It was said in the *Rigdon*

case, and cited on this point in *Foltz v. Hardin*, 139 Ill. 405, 410, that in case of such a compromise the pledgee "will be compelled to account to the pledgor for the face value." See also *Zimpleman v. Veeder*, 98 Ill. 613.

It is urged that the court erred in sustaining exceptions to the amended answer of the Hunters, pleading that the collateral note was procured by Youngquist from the Hunters by false representations, and that the consideration therefor had partially failed. In the exchange of real estate between Youngquist and the Hunters the note for $10,500 was supposed to represent the excess value of Youngquist's property over that of the Hunters'. Since the transaction the Hunters have voluntarily sold the land conveyed to them by Youngquist. As they took no steps to rescind the exchange, made no effort, and were unable, to put Youngquist *in statu quo*, and Daniel, after full knowledge of the matters so pleaded and receiving advice from their attorney that they were liable on the $10,500 note, proceeded to purchase it, as aforesaid, they were in no position to raise the defense of fraud or want of consideration in the present action. (*Fisher v. Burke*, 285 Ill. 290, 294.)

It is also urged as error that the court denied the Hunters leave to amend their answer by pleading the proceedings in another case whereby the premises, conveyed by the trust deed securing the $10,500 note, were sold under foreclosure of a prior mortgage, in which the decree of sale found said Lindgren to be the legal holder and owner of said $10,500 note and trust deed, to which suit both Youngquist and Lindgren were parties defendant. It did not appear that there was any surplus on said foreclosure sale. Passing on this identical issue in *Gouwens v. Gouwens*, 222 Ill. 223, 230, where there was no surplus and no adjudication of adverse interests between codefendants, the court said the decree was not evidence in favor of

either party against the other. Under this decision and the facts offered to be pleaded the court's ruling was justified.

Nor do we think there was laches, as urged, in the fact that this suit was not brought until about a year and a half after the sale of the collateral note.

Finding no reversible error we think the decree should be affirmed.

*Affirmed.*

MORRILL and GRIDLEY, JJ., concur.