# ROLAND COLSTAD AND ANOTHER v. HENRY LEVINE AND ANOTHER.[1]

December 10, 1954.

No. 36,309.

---

[1]Reported in 67 N. W. (2d) 648.

*Levine & Levine* and *Harry H. Peterson,* for appellant.

*Thomson & Williams,* for respondents.

Matson, Justice.

In an action for specific performance, defendant Levine appeals from an order denying his motion for a new trial.[2]

Plaintiffs, partners in the manufacture of counter tops and tables, seeking to obtain a new business location, purchased from the defendant an old residential property described merely by its street address in a memorandum agreement which, insofar as here pertinent, provides:

"Sept. 22, 1948

"Received of * * * [plaintiffs] Five Hundred ($500.00) Dollars as a guarantee of good faith accompanying offer of $12,500, on terms as follows: $2000.00 on or before Sept. 25, 1948 and the balance of $10,000.00 in installments of $100.00 a month or more * * * for the purchase of the house at *807 Washington Ave. S.E. Mnpls. Minn.*

\* \* \* \* \*

"I hereby accept this offer

"[/s/] Henry Levine

"Seller" (Italics supplied.)

The premises constituted the westerly part of a larger tract owned by the defendant, namely, *the east 84 feet of the north 48 feet of lot 10, block 6, Baker's Addition to St. Anthony.* The basic dispute herein concerns the extent of the property purchased by the plaintiffs. Defendant claims that he sold the plaintiffs only the west 44 feet of the larger tract; whereas plaintiffs claim that they purchased the west 58.45 feet so as to include the house, porch, and the sidewalk adjacent to the house on the east side and in addition an eight-foot driveway east of the sidewalk. This question of fact as to whether plaintiffs had bought only the west 44 feet or the west 58.45 feet of defendant's 84-foot frontage, was upon special interrogatories submitted to the jury which found for the plaintiffs, and its findings were adopted by the court. The trial court granted

---

[2]The action was dismissed as to the defendant National Toddle House Corporation because the lease under which it asserted a claim to the property had been cancelled.

specific performance and ordered defendant to convey the west 58.45 feet to plaintiffs by warranty deed.

This appeal is from the order of the trial court denying defendant's motion for amended findings or a new trial.

Aside from the basic question of whether under the circumstances the description of the property by street number sufficiently identified the property to warrant specific performance, we have issues as to: (1) Laches, (2) whether the court abused its discretion in permitting plaintiffs to amend their pleadings, (3) whether the plaintiffs are the real parties in interest, (4) whether the court and the jury were both guilty of prejudicial misconduct, and (5) whether the trial court erred in its charge by permitting the jury to find that the fiduciary relationship of attorney and client existed between the parties.

■■■ Was the property sufficiently described by a street address to warrant specific performance? In passing upon the adequacy of a property description, this court will not apply the statute of frauds (M. S. A. 513.05) in a rigid manner and hold an attempted conveyance void when the description used in the memorandum agreement, by itself or as amplified by other instruments or papers with which the memorandum is expressly or impliedly connected,[3] provides an adequate guide to locate and identify the property in the light of the surrounding circumstances and in the light of facts of which a court can take judicial notice.[4] Since there was no writing other than the memorandum above quoted, the adequacy of the description must be determined in the light of the surrounding circumstances. Although parol evidence is inadmissible to supply, modify, or aid a description which is void on its face, it is admissible to identify the land and to apply such description thereto, and for this purpose parol evidence may be received showing the fact of the execution, delivery, and receipt of the writing or writings,

[3]Taylor v. Allen, 40 Minn. 433, 42 N. W. 292.

[4]Doyle v. Wohlrabe, 243 Minn. 107, 66 N. W. (2d) 757; Swallow v. Strong, 83 Minn. 87, 85 N. W. 942; The Gregory Co. v. Shapiro, 125 Minn. 81, 145 N. W. 791; see, 49 Am. Jur., Statute of Frauds, § 395; Restatement, Contracts, § 208; 2 Corbin, Contracts, § 505.

and also the time, place, situation of the property and the parties, and other accompanying circumstances.[5]

■ Taking as we must the view of the evidence most favorable to the court's findings, we have the following factual circumstances which were proper to consider in applying the street number description to the property to ascertain its extent: While the plaintiffs were contemplating buying the property, they met the defendant on the premises and there informed him that they needed a driveway at least eight feet wide to accommodate the large trucks used in making deliveries to and from their business establishment. In the presence of the defendant, one of the plaintiffs measured off a distance of eight feet eastward of the sidewalk adjacent to the porch on the east side of the house. The defendant assured the plaintiffs that such driveway strip would be included. Immediately thereafter the memorandum agreement was executed and plaintiffs made the $500 payment which was followed in a few days by two additional payments, one of $2,000 and one of $1,000. The plaintiffs took immediate possession of the premises, and in their business operations the driveway area was used as a truck entrance. It is significant that, if only the west 44 feet had been sold to plaintiffs, as defendant contends, the easterly line would have deprived plaintiffs not only of the driveway but also of the entrance sidewalk and a part of the porch. We need not recite certain evidence contrary to the verdict, since the evidentiary conflict has been resolved by the trier of fact.

The situation of the parties and the circumstances which accompanied the transaction, as above given, were sufficient to apply the street number description to the property and thereby to ascertain that it embraced the westerly 58.45 feet. It is recognized in this jurisdiction and elsewhere that a description of urban property only by its street number address in an agreement to convey is sufficient to satisfy the statute of frauds when the area of such property may

---

[5]Doyle v. Wohlrabe, *supra;* The Gregory Co. v. Shapiro, 125 Minn. 81, 145 N. W. 791; Tice v. Freeman, 30 Minn. 389, 15 N. W. 674.

284

be determined by considering the situation of the parties and the circumstances accompanying the transaction.[6]

The contention that plaintiffs by reason of laches are barred from receiving specific performance is without merit. The evidence shows that plaintiffs, within two or three days after the memorandum agreement was signed, demanded a contract for deed and frequently thereafter repeated such demand. Each time plaintiffs were assured by the defendant that they would receive a deed or a contract for deed as soon as an unidentified estate was settled. When the plaintiffs discovered that a lessee of the defendant[7] was claiming a part of the property which they had purchased, they immediately commenced this action. This evidence precludes a finding of laches and negates any conclusion that the plaintiffs waived or abandoned the sale so as to forfeit their right to specific performance. See, McDermid v. McGregor, 21 Minn. 111.

■ In their original complaint plaintiffs claimed only a permanent easement to the eight-foot driveway. The day before the trial, the court, over the objections of the defendant, permitted plaintiffs to amend their complaint by substituting for the theory of easement an allegation of outright ownership. At the time the amendment was allowed, the court offered to grant the defendant additional time in which to prepare for the trial. The defendant assured the court that he desired no delay and that he was ready to proceed. Rule 15.01 of Rules of Civil Procedure provides that pleadings may be amended with leave of court and that "leave shall be *freely* given *when justice so requires*." (Italics supplied.) This rule, which makes

---

[6]Ham v. Johnson, 51 Minn. 105, 52 N. W. 1080; Gustafson v. Juckem, 164 Minn. 516, 205 N. W. 446; Tandy v. Knox, 313 Mich. 147, 20 N. W. (2d) 844; Whaley v. Milton Const. & Supply Co. (Mo. App.) 241 S. W. (2d) 23; Bernstein v. Rosenzweig, 1 N. J. Super. 48, 62 A. (2d) 147; MacLaeon v. Lipchitz, 56 N. Y. S. (2d) 609, affirmed, 269 App. Div. 953, 58 N. Y. S. (2d) 337; 37 C. J. S., Frauds, Statute of, § 188. Contra: Huntley v. Smith, 153 Minn. 297, 300, 190 N. W. 341, 343.

[7]The National Toddle House Corporation. See footnote 2.

no substantial change in our prior Minnesota practice,[8] vests wide discretionary powers in the trial court for the liberal granting of an amendment to the pleadings when justice in the particular case so requires,[9] even though the proposed amendment may change the legal theory of the action.[10] In the absence of a showing of prejudice—and such prejudice could not very well be shown since the defendant voluntarily elected to go to trial without delay—, it was clearly within the court's discretionary power to permit plaintiffs to amend their complaint.

■ We do not agree with defendant's assertion that plaintiffs are not the real parties in interest.[11] The agreement of purchase was made by the plaintiffs as individuals on September 22, 1948. Plaintiffs did not incorporate until January 1950. The property was never conveyed to the corporation, and there is no showing that it ever was carried on the corporate books for any purpose. The bare fact that certain taxes and purchase money payments were made out of funds deposited to the corporation's bank account is of no controlling significance, and this is especially true since there is no showing that the payments were made on behalf of the corporation instead of for the plaintiffs as individuals. The determination of the real party in interest in an action is ordinarily a question of fact. Peterson v. Johnson Nut Co. 204 Minn. 300, 283 N. W. 561. There is no basis here for a finding that plaintiffs were not the real parties in interest.

■ No misconduct resulted from the court's admonition, in the presence of the jury, that defendant's counsel should refrain from re-

---

[8]Brannan v. Shertzer, 242 Minn. 277, 64 N. W. (2d) 755; 1 Youngquist & Blacik, Minnesota Rules Practice, p. 476.

[9]Brannan v. Shertzer, *supra*.

[10]Wright, Minnesota Rules, p. 101; Holmes v. Campbell, 12 Minn. 141 (221); 6 Cyclopedia of Federal Procedure (3 ed.) §§ 18.18, 18.19; see, 12 Minn. L. Rev. 97, 105 to 112.

[11]As to the rule that every action shall be prosecuted by the real party in interest, see Rule 17.01 of Rules of Civil Procedure; Anderson v. Connecticut Fire Ins. Co. 231 Minn. 469, 43 N. W. (2d) 807, and cases cited therein.

peating questions upon which the court had already ruled. Hansen v. St. Paul City Ry. Co. 231 Minn. 354, 43 N. W. (2d) 260, involved an entirely different situation.

After the special interrogatories had been submitted to the jury, the parties stipulated that the jury might bring in a sealed verdict if the court was not in session. It was further agreed that each party waived a polling of the jury. The jurors brought in a sealed verdict and then dispersed to their homes over the week end. The following Monday the sealed verdict was opened, and upon defendant's request the jury was polled. One of the jurors said he was in doubt and that he wished to consider the matter further before agreeing to the verdict. It does not appear that during the period of their separation the jurors had discussed the case with others or had in any manner been subjected to ulterior influence. The doubting juror assured the court he had talked to no one. The court sent the jury out for further deliberation. Again a verdict was returned for the plaintiffs, and upon being again polled all jurors assented to such verdict. No error occurred. When a jury delivers a sealed verdict at a time when the court is not in session, and the jurors then separate until they again appear before the court for the opening of their verdict, and, upon then being polled, one of the jurors dissents to the verdict, it is not error to send the jury out for further deliberation when there is no evidence of improper conduct or improper influence with respect to any juror during the period of separation. Weatherhead v. Burau, 238 Minn. 134, 55 N. W. (2d) 703.

Defendant, who is a lawyer, asserts that there is no evidentiary support for a finding that an attorney and client relationship existed between him and the plaintiffs at the time of the sale, and that therefore, the trial court erred in instructing the jury that, if it found such relationship existed between defendant and the plaintiffs at the time of the sale, then defendant owed plaintiffs a high fiduciary duty and was duty bound to treat them with absolute candor and plaintiffs had a right to assume that he was so treating them.[12] The relation between an attorney and his client is a fidu-

---

[12]See, Tancre v. Reynolds, 35 Minn. 476, 29 N. W. 171.

ciary one of the highest trust and confidence and, *as long as the relationship or the influence thereof exists*,[13] requires the attorney to observe the utmost good faith and candor and not to allow his private interest to conflict with those of his client.[14] The relation places the attorney under no legal disability in dealing with his client but simply imposes upon him a much higher standard of good faith that is required in business dealings where the parties trade at arm's length.[15] Where the relationship exists, these strict rules of fiduciary conduct cast upon the attorney the burden of proving that he has been absolutely frank and fair with his client and has taken no advantage of the confidence arising from such professional relation.[16] Obviously, where there is no evidence that the relation existed when the parties dealt with each other, it is error to charge a jury that they may find such relation and then, in consequence thereof, hold a defendant lawyer to a higher standard of good faith than if he were dealing with the plaintiffs at arm's length.

It is usually said that the fiduciary duty ceases when the professional relationship is terminated.[17] This is not always true. Since the duty of fidelity and good faith arising out of the confidential relation of attorney and client is founded, not on the professional relation per se, but on the influence which the relation creates, such duty does not always cease immediately upon the termination of the relation but continues as long as the influence

---

[13]May an attorney, after the attorney and client relationship is terminated, for his own advantage make use of knowledge acquired from the client during such relationship? See, Sanford v. Flint, 108 Minn. 399, 122 N. W. 315; see, also, footnote 18.

[14]Petraborg v. Zontelli, 217 Minn. 536, 15 N. W. (2d) 174; 5 Am. Jur., Attorneys at Law, § 45.

[15]5 Am. Jur., Attorneys at Law, § 48.

[16]Tancre v. Reynolds, 35 Minn. 476, 29 N. W. 171; 536 Broad St. Corp. v. Valco Mtge. Co. Inc. 135 N. J. Eq. 361, 38 A. (2d) 903, affirmed, 138 N. J. Eq. 431, 48 A. (2d) 191; 5 Am. Jur., Attorneys at Law, § 50.

[17]As to different ways in which attorney-client relation may be terminated, see 1 Thornton, Attorneys at Law, §§ 137 to 142; Malcolm, Legal and Judicial Ethics, § 86; 5 Am. Jur., Attorneys at Law, §§ 34 to 43; 7 C. J. S., Attorney and Client, §§ 108 to 118.

therefrom exists.[18] The cessation of the confidential influence may be shown by a complete abandonment of the relation or, according to the circumstances of the individual case, by certain decisive or overt acts.[19] Only when the confidential influence of the relationship ceases, may the parties deal with each other at arm's length.[20]

In the light of these principles, was there sufficient evidence to support a finding that the relation existed so as to justify the trial court's charge to the jury? One plaintiff testified that defendant had been retained as their counsel and was such when the property was bought. Both plaintiffs testified that defendant prepared a partnership agreement for them on July 21, 1947. Defendant admits that he may have prepared such partnership agreement. There is also testimony that defendant prepared the income tax returns for one of the plaintiffs and his wife. In further substantiation of the relationship, we have three checks issued to the defendant for attorney's fees. These checks were dated March 14, 1949, May 12, 1949, and December 24, 1949. It is true that defendant denied that these checks were for professional services. The resolution of the conflict in evidence was, however, for the jury. It follows that there was ample evidence to sustain a finding that defendant from July 1947 to December 24, 1949, performed various legal services for the plaintiffs. The memorandum purchase agreement was executed on September 22, 1948. There is no evidence that plaintiffs retained any attorney other than the defendant during the period from July 21, 1947, when the partnership agreement was made, and January 1950 when plantiffs retained another attorney to prepare articles of incorporation. We can only conclude that the evidence reasonably sup-

[18]536 Broad St. Corp. v. Valco Mtge. Co. Inc. 135 N. J. Eq. 361, 38 A. (2d) 903, affirmed, 138 N. J. Eq. 431, 48 A. (2d) 191; Youngquist v. Hunter, 227 Ill. App. 152; Conner v. Hodgdon, 120 Wash. 426, 207 P. 675; 7 C. J. S., Attorney and Client, §§ 125, 132.

[19]See, Conner v. Hodgdon, *supra;* 7 C. J. S., Attorney and Client, § 132.

[20]The duty also operates after the relation has ceased to bar an attorney from making use for his own advantage of knowledge acquired from the client during, or as a result of, such confidential relation. See, Sanford v. Flint, 108 Minn. 399, 122 N. W. 315.

ports a finding that defendant was plaintiffs' attorney when the property was bought and that the influence of the professional relationship continued throughout the negotiations which culminated in the purchase of the property. The trial court therefore did not err in instructing the jury upon the attorney and client relationship.

The order of the trial court is affirmed.

Affirmed.

1Reported in 67 N. W. (2d) 644.