WILLIAM H. GASLIN *vs.* OVID PINNEY and another.

December 13, 1877.

**Agreement for Sale of Personal Property—Statute of Frauds—Subsequent Delivery.**—The subsequent delivery of a part of the personal property agreed to be sold under an agreement within the statute of frauds, takes the agreement out of the operation of the statute.

**Sale of Logs—Contract for Designated Scaler—Negligence of Purchaser.**—Where the agreement was for the sale of a designated quantity of logs running in the river, and the purchasers were to select and take them into their boom, and they were to be scaled there by a person designated in the contract, and the seller gave to the purchasers an order authorizing such person to scale them to the purchasers, *held*, that it was the duty of the purchasers to have them scaled as soon as in the boom, and if they neglect beyond a reasonable time to do so, they cannot take advantage of the fact that the logs have not been scaled by the person designated.

**Evidence—Verdict.**—Evidence held sufficient to sustain the verdict.

Appeal by defendants from an order of the district court for Hennepin county, *Young*, J., presiding, denying a motion for a new trial.

*J. Guilford*, for appellants.

*Lochren, McNair & Gilfillan*, for respondent.

GILFILLAN, C. J.   Action upon certain drafts of defendants drawn by their agent, William Brockway, upon the defendant.

The authority of the agent to draw the firm's draft upon Pinney, within the limits prescribed by the defendants' articles of partnership, was affirmed by this court when this case was before it at the April term, 1876.   [*Gaslin* v. *Pinney*, 23 Minn. 26.]   Of the defences originally pleaded one was that the drafts were given without consideration, and this is the only one under which any question was raised here. The alleged consideration was a contract by plaintiff to sell to defendants a certain quantity of logs, and on the trial, as stated in the settled case, "defendants were allowed to amend their answer and allege recoupment, so as to offset or recoup the amount of the proceeds of such logs as were not

received by the defendants under the contract with plaintiff, but which, as defendants claim, were afterwards disposed of by the plaintiff."

The testimony shows that there was an oral agreement made in May, 1875, by defendants, through their agent and the plaintiff, for the sale by plaintiff to them, at the rate of $8.25 per thousand feet, of a large quantity of logs of certain marks, the quantity of which appears from a written order, given by plaintiff to defendants, to the scaler, upon whom the parties had agreed, to have been one million feet. This quantity was to be selected by defendants out of nine million feet of logs of the designated marks, owned or claimed by the plaintiff, as the logs should from time to time float in the river to a point above the defendants' mill. They were to be scaled in their boom by George Barber. No part of the price for the logs was paid, nor of the logs delivered at the time of making the agreement. There was evidence tending to show, and the jury in a special verdict found the fact to be, that within about a month afterwards the defendants received into their boom ninety thousand feet. This took the agreement out of the statute of frauds. *Sprague* v. *Blake,* 20 Wend. 61; *McKnight* v. *Dunlap,* 5 N. Y. 537; *McCarthy* v. *Nash,* 14 Minn. 127.

Defendants claim that those logs were not scaled by George Barber, and that under the agreement his scaling was a condition to their liability to pay for them. Even if that were the proper effect of the contract, they cannot take advantage of it; because, as they were to pick up the logs in the river and take them into their boom, and as they had received an order from plaintiff to Barber to scale the million feet to them, it was their duty to have them scaled as soon as in the boom, and their neglect to do so beyond a reasonable time cannot operate to their advantage.

Evidence was given to prove that the logs were cut on the lands of, and the designated marks were owned by, the Lake Superior & Mississippi Railroad Company; and on the other hand there was evidence tending to show, and sufficient to

sustain the verdict, that the company had sold to Stanchfield a permit to cut and sell the logs, and that he had authorized plaintiff to sell them.

The part of the charge of the court below, relating to the state of the title to the logs, which is here claimed to be erroneous, was not excepted to below.

Under the amendment to their answer defendants showed that after they ceased to receive the logs plaintiff sold the remainder to other parties, and in assessing the damages the jury deducted from the entire contract price for the logs in the contract between plaintiff and defendants the amount of the proceeds of such sale to other parties, thus allowing defendants just what their amendment claimed as a set-off. They cannot complain that the jury adopted their theory of what should be allowed them. Nor, under the pleadings as they stood after the amendment, could they claim the right to prove the value of the logs or the relative value of those received by them, and those not received.

Order affirmed.