## MAX SCOTT v. T. W. STEVENSON COMPANY.[1]

June 25, 1915.

Nos. 19,140—(116).

**Sale — part performance — statute of frauds.**

1. Where a parol contract is made for the sale of goods, a subsequent delivery and acceptance of a part of the goods, under and pursuant to the contract, satisfied the statute of frauds.

[1] Reported in 153 N. W. 316.

---

Note.—For cases passing upon mutuality of accepted proposition to furnish such material as one needs in his business, see notes in 11 L.R.A.(N.S.) 713 and 43 L.R.A.(N.S.) 730.

**Same — manufacturer's contract with jobber valid.**

2. Where a manufacturer made a contract with a wholesale dealer, having an established business, to supply him, at specified prices, with such quantity of certain goods as should be required for his trade during the next ensuing selling season, and as a part of the same transaction sold and delivered to him more than $6,000 worth of such goods to be used by his traveling salesmen as samples in procuring orders, and in prior seasons had made similar contracts with him which had been performed by both parties, such contract is valid.

**Breach of contract — advance in guaranteed price.**

3. The manufacturer having stipulated "prices guaranteed to March 1st, 1910, after that we are to give 30 days' notice before we advance price," his refusal to furnish goods in January and February except at an advanced price was a breach of the contract.

**Contract — notice of advance in price.**

4. The above stipulation did not require him to wait until March 1, before giving notice of an advance in price, and a notice given in January took effect immediately after March 1.

**Damages — increased cost of goods for time of guaranty.**

5. The expense above the contract price necessarily incurred in procuring the goods which, in the ordinary course of business, would have been ordered from the manufacturer on or before March 1, if he had not repudiated the contract, may be recovered as damages; but it was error to include in the damages the increased cost of goods which would not have been ordered until after that date.

**Ratification of contract — amendment of answer.**

6. The evidence that plaintiff authorized and ratified the contract is ample, and the court did not err in amending the answer to conform to the facts.

Action in the district court for Hennepin county to recover a balance of $1,787.50 for goods, wares and merchandise sold. The answer admitted the unpaid balance and as a counterclaim set up a contract between the parties whereby defendant agreed to purchase the goods at certain prices and plaintiff as a part of the agreement contracted to furnish to defendant such goods of a like kind as it might purchase during the selling season at the same prices, which, by the terms of the contract were guaranteed by plaintiff to be the same until March 1, 1910, and after that date not to be advanced except upon 30 days' notice; alleged a breach of this agreement on

February 7, 1910, and that defendant was compelled to manufacture the coats at a cost of $2,265.49 in excess of the purchase price of the garments under the contract; and demanded judgment for that amount and for $1,600 damages in addition. The reply denied the contract.

The case was tried before Hale, J., who, when defendant rested, denied plaintiff's motion for findings in his favor on the counter-claim, made amended findings and ordered judgment in favor of defendant for $1,037.99. Plaintiff's motion for a new trial was denied. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Reversed.

*Orr, Stark & Kidder,* for appellant.

*Snyder & Gale* and *Frank J. Morley,* for respondent.

TAYLOR, C.

Plaintiff is located in the city of New York, and is, and for several years has been, a manufacturer of fur lined and plush lined coats. Defendant is located in the city of Minneapolis, and is, and for many years has been, a wholesale dealer in coats, caps, gloves and similar articles, and is also engaged in manufacturing such articles. For at least two seasons prior to the transactions in controversy, defendant had purchased fur lined and plush lined coats from plaintiff to resell to its customers engaged in the retail trade. The business was conducted in this manner: In the fall of each year, defendant purchased from plaintiff enough coats of the several different sorts to supply each of its traveling salesmen with one of each sort for use as a sample. Thereafter the salesmen exhibited these samples to the retail dealers and took orders from them for like coats, and defendant, from time to time, ordered from plaintiff the number required to fill the orders so obtained.

On November 2, 1909, plaintiff's representative visited defendant at its place of business in Minneapolis and made a parol contract to furnish defendant with coats for the following season, and took an order signed by defendant for 15 each of 19 different grades and styles of coats to be delivered not later than December 10, for use as samples. The several grades and styles were designated in the

order by numbers and the price to be paid for each coat was specified therein.   At the bottom of the order plaintiff's representative endorsed and signed the following:

"Prices guaranteed to March 1st, 1910, after that we are to give 30 days' notice before we advance price.

"Specialty Fur Coat Co.
"Jacob Marquis."

This order was made in duplicate and one copy was retained by defendant and the other forwarded to plaintiff.   Defendant had 17 traveling salesmen, and on November 30 wrote plaintiff as follows:

"On all of our sample line which we ordered fifteen coats each, we would ask you to kindly make seventeen coats each instead.
"Kindly acknowledge receipt and greatly oblige,
"Yours truly,
"Patterson & Stevenson Company.
"Per
"W. C. S."

To which plaintiff replied as follows:

"Complying with the request contained in your favor of the 30th ult., we have changed your order on samples wherever the same reads 15 coats to read as 17 coats.
"Trusting to be able to forward them to you with the least possible delay, we are,
"Yours truly,
"Specialty Fur Coat Co."

These sample coats were manufactured and delivered, and defendant placed them in the hands of its traveling salesmen who proceeded to take orders for like coats from retail dealers.   By letter dated January 12, 1910, plaintiff notified defendant that "prices on all fur coats have been advanced, and in conformity with this advance we have raised the prices on your various numbers

as follows," giving a list of prices.   On January 14, defendant replied calling attention to the original order and the stipulation as to prices therein, and insisted that it was entitled to purchase at such prices.   On February 2, 1910, defendant mailed plaintiff an order for 480 coats at the prices stated in the original order. Plaintiff refused to fill this order at such prices and so notified defendant on February 5.   Defendant refused to pay the advanced prices and proceeded to manufacture the coats itself.   The purchase price for the coats shipped under the original order amounted to the sum of $6,355.70 of which defendant had paid the sum of $4,568.20 before plaintiff refused to fill the order of February 2, leaving a balance due of $1,787.50.   Defendant refused to pay this balance and plaintiff sued therefor.   Defendant admitted that this amount was due plaintiff but interposed a counterclaim for damages in the sum of $3,865.49 for breach of the contract.   By consent the cause was tried before the court without a jury.   The court found that defendant was entitled to damages in the sum of $2,825.-49, deducted the $1,787.50 due plaintiff from this amount, and rendered judgment in favor of defendant for the balance of $1,037.99 and interest thereon.   Plaintiff appealed from the judgment.

The court made quite extended findings of fact and among other things found as follows:

"That on or about the 2nd day of November, A. D., 1909, plaintiff and defendant made and entered into a certain contract, whereby plaintiff agreed to manufacture for and sell to defendant, and defendant agreed to purchase from plaintiff, certain fur and plush lined coats, at and for certain prices specifically named, amounting in all to the gross sum of six thousand three hundred fifty-five and 70/100 ($6,355.70) dollars; that at the time said contract was made it was understood by and between both plaintiff and defendant that defendant was purchasing said coats as sample coats with the intention of placing the same in the hands of its traveling salesmen as samples, and with the intention of soliciting orders from the trade for coats of like character to the said samples; that as a part of the consideration for the purchase by defendant of said sample coats,

and as a part of said contract, it was further agreed by and between plaintiff and defendant that the plaintiff would manufacture for and sell to defendant such further and additional coats of like kind and similar to said samples as might be required by defendant to satisfy the requirements of its trade for the next ensuing selling season which would commence about the 1st day of December, 1909, and extend through the winter and following spring; that it was agreed by and between the plaintiff and defendant that said additional coats would be sold by plaintiff to defendant at the same prices stipulated in said contract for said sample coats up to March 1st, 1910, and after said date it was agreed that said prices should not be advanced except upon thirty (30) days' notice first given by plaintiff to defendant, it being understood by and between both plaintiff and defendant that such advanced prices should not in any event become effective until April 1st, 1910."

The above finding and the contract set forth therein are attacked on several grounds.

1. Plaintiff contends that the contract is within the statute of frauds and void. This statute, so far as here material, provides:

"Every contract for the sale of any goods   *   *   *   for the price of fifty dollars or more, shall be void, unless: (1) A note or memorandum of such contract is made and subscribed by the parties to be charged therewith; or (2) the buyer accepts and receives part of such goods   *   *   *   or, (3) the buyer, at the time, pays some part of the purchase money."  Section 6999, G. S. 1913.

The delivery and acceptance of a part of the goods subsequent to the making of the agreement, but under and pursuant to the agreement, is sufficient to satisfy this statute.  McCarthy v. Nash, 14 Minn. 95 (127); Gaslin v. Pinney, 24 Minn. 322; Ortloff v. Klitzke, 43 Minn. 154, 44 N. W. 1085.  The court found that the agreement for the sale of the sample coats, and the agreement for the sale of the other coats in controversy, were parts of one entire contract; and the evidence is abundant to sustain such finding. Sample coats to the value of more than $6,000 were delivered, received and accepted under and pursuant to the contract, and more

than $4,000 of the purchase money for the coats so delivered was paid and accepted. This was sufficient to satisfy the above statute.

2. Plaintiff contends that, under the doctrine of Bailey v. Austrian, 19 Minn. 465 (535), and Tarbox v. Gotzian, 20 Minn. 122 (139), the contract is void for indefiniteness, uncertainty and want of mutuality, except as to the coats specified in the written order of November 2, 1909. In Bailey v. Austrian, plaintiff, a foundryman, promised to purchase and defendant to furnish, at specified prices, all the pig iron wanted by plaintiff in his business during the remainder of the year. The court said "there is no absolute engagement on plaintiff's part to 'want,' and of course no absolute engagement to *purchase* any iron of defendant;" and held the contract invalid for the reason that plaintiff had not obligated himself to purchase any iron whatever and consequently there was no consideration to support it. In Tarbox v. Gotzian, plaintiff agreed to furnish defendant, a merchant, all the boot and shoe packs which defendant should require in his business during the next ensuing season, at such times and in such quantities as defendant should request, and at specified prices which defendant promised to pay. Plaintiff furnished some of the goods and then refused to furnish any more. The court held that, under the rule announced in Bailey v. Austrian, defendant could not recover damages for plaintiff's failure to furnish additional goods. In Minneapolis Mill Co. v. Goodnow, 40 Minn. 497, 42 N. W. 356, 4 L.R.A. 202, after citing the above cases and remarking that the court held in those cases that there was no absolute engagement to purchase, the court said: "If upon a proper construction of the written agreement in this case it be found that the promises are all on one side, if plaintiff promises all that is promised, and defendant promises nothing, then the case is analogous to those we have cited, and must be governed by the decisions in them;" but held that the doctrine of those cases did not apply for the reason that, although there was no express promise on the part of defendant to furnish the logs then in controversy, there was an implied agreement to that effect. In Beyerstedt v. Winona Mill Co. 49 Minn. 1, 51 N. W. 619, defendant, who operated a flouring mill, agreed in writing to pay plaintiff

a fixed sum per load for furnishing and delivering at its mill, for fuel, sawdust and shavings from two designated sawmills. After a considerable quantity of shavings and sawdust had been delivered under this agreement, defendant's mill burned down and defendant refused to accept or pay for any more as it no longer had use for fuel. Plaintiff sued for damages for breach of the contract and recovered a verdict of $2,900. The court held that the contract could be proved by parol, as the written agreement showed upon its face that it was incomplete; that the delivery of a portion of the shavings and sawdust satisfied the statute of frauds; that parol proof that the contract intended the furnishing of all the shavings and sawdust produced by the two designated mills rendered the contract sufficiently definite and certain; and that plaintiff was entitled to recover the damages awarded him. In Staples v. O'Neal, 64 Minn. 27, 65 N. W. 1083, defendant sold plaintiff a quantity of sawlogs then in the river and agreed to cut a certain other quantity of sawlogs during the following winter and drive and deliver them during the following spring at a specified price per thousand feet. The contract provided that plaintiff should not be required to take any logs under it which were not delivered during the following season. Defendant failed to deliver a large quantity of the logs and the price having risen sold them to other parties. Plaintiff sued for damages and defendant invoked the doctrine of Bailey v. Austrian and insisted that, as plaintiff had not obligated himself to purchase the logs in question, defendant was not liable in damages for failure to deliver them. The court said:

"If there is no consideration for the further performance of a contract by one party but the further performance by the other party, with whom it is wholly optional whether he will perform or not, the contract lacks mutuality, and is not enforceable by either party. Bailey v. Austrian, 19 Minn. 465 (535); Bolles v. Sachs, 37 Minn. 315, 33 N. W. 862. But where the party holding the option has already given a valuable consideration for it, he may enforce the contract. Smith v. St. Paul & D. R. Co. 60 Minn. 330, 62 N. W. 392. In other words, if he has bought his option for value paid, or absolutely agreed to be paid, he has bought a valuable

right, which he is entitled to exercise and enjoy. As a part of the contract in this case the plaintiff bought absolutely and paid for 1,500,000 feet of logs, which had already been cut and were afloat when the contract was made. He agreed to pay and did pay, $8.50 per 1000 for these logs, and it must be presumed that the consideration for the option was included in this."

In Emerson v. Pacific Coast & Norway Packing Co. 96 Minn. 1, 104 N. W. 573, 1 L.R.A.(N.S.) 445, 113 Am. St. 603, 6 Ann. Cas. 973, defendant constituted plaintiff its sole agent, "for the sale of at least eighty-five per cent of its entire pack of fish of all kinds, upon a brokerage of five per cent, for a period of two years, at a selling price to be agreed upon between the parties." At the end of the first year defendant repudiated the contract, and thereafter plaintiff sued for damages. He had entered upon the performance of the contract and incurred expense on account thereof; and the court held that the promises "were not all on one side; there was mutuality of obligation; and an action for damages would lie upon its breach;" and further held that he was entitled to recover as damages the profits which he would have made during the second year had he been permitted to complete the contract.

The instant case is not void for want of mutuality; the promises are not all on one side, and the absolute and executed part of the contract is a sufficient consideration to support all the provisions of the contract. In addition to the cases above cited see The Gregory Co. v. Shapiro, 125 Minn. 81, 145 N. W. 791; Rotzien-Furber Lumber Co. v. Franson, 123 Minn. 122, 143 N. W. 253; Lapham v. Flint, 86 Minn. 376, 90 N. W. 780; Ames-Brooks Co. v. Aetna Ins. Co. 83 Minn. 346, 86 N. W. 344.

In many lines of business it has become common in late years for those engaged therein to contract in advance, at specified prices, for such quantity of materials or of goods as may be needed in such business during a specified period of time. Where such contracts are supported by a consideration other than the mutual promises of the parties, their validity is beyond question. Where the only consideration for the promise to sell is the promise of the buyer to purchase such quantity as he may need, the authorities are not unani-

mous, but the decided weight of authority is to the effect that, if the buyer has an established business whose requirements may be estimated approximately, the contract is not void either for uncertainty or want of mutuality; but is valid and may be enforced to the extent of the ordinary requirements of such business when carried on and conducted in the manner contemplated by the parties at the time of making such contract. Lima Locomotive & Machine Co. v. National Steel Castings Co. 11 L.R.A.(N.S.) 713 [155 Fed. 77, 83 C. C. A. 593], and numerous cases cited in note appended thereto; T. B. Walker Mnfg. Co. v. Swift & Co. 43 L.R.A.(N.S.) 730 [200 Fed. 529, 119 C. C. A. 27], and cases cited in note appended thereto.

In the instant case, similar contracts between the same parties for each of the two preceding seasons had been made and performed, and each knew that defendant would dispose of a substantial quantity of goods in the ordinary course of business, and could estimate such quantity with sufficient accuracy so that the contract was not void as a matter of law for uncertainty. But, if the contract were otherwise void for uncertainty, defendant had acquired a valid option, supported by sufficient consideration, to demand and receive, within the prescribed time, enough coats to enable it to fulfil its contracts with retail dealers. Staples v. O'Neal, 64 Minn. 27, 65 N. W. 1083; The Gregory Co. v. Shapiro, 125 Minn. 81, 145 N. W. 791.

3. The contract contains this agreement on the part of plaintiff: "Prices guaranteed to March 1st, 1910, after that we are to give 30 days' notice before we advance price." Defendant contends, and the trial court held, that under this provision plaintiff must wait until March 1, before giving notice of an advance in price, and that such advance could not take effect until April 1. We are unable to sustain this contention. We think that the intention of the parties as expressed by this stipulation was that prices should not be advanced until after March 1, not that notice of an advance should not be given until after that date. By putting the statement in the following form and supplying the four words in italics, the meaning which we think the parties intended by the language used becomes clearer, viz.: "Prices guaranteed to March 1st, 1910, *and*

we are to give 30 days' notice before we advance price *if advanced after that date."* Plaintiff expressly guaranteed prices until March 1, and to construe the remainder of the stipulation as extending this guaranty until April 1, would be to disregard the plain import of this explicit statement and give an unwarranted effect to the ambiguity in the remainder of the stipulation.

On January 12, 1910, plaintiff gave notice of an advance in prices. Such advance could not become effective until after March 1. On February 2, defendant ordered a large number of overcoats at the prices specified in the contract. Plaintiff refused to furnish them or to furnish any coats at such prices, and thereby breached the contract. Having given notice of an advance in prices more than 30 days prior to March 1, plaintiff was required to furnish coats at the original prices until March 1, and no longer. His repudiation of the contract relieved defendant from the useless formality of sending him further orders. It follows that defendant is entitled to damages on account of the 480 coats which it ordered and which were not furnished, and on account of such other coats as it can show with reasonable certainty were required in its business and would have been ordered on or prior to March 1, 1910, if plaintiff had not repudiated the contract; but that defendant is not entitled to damages on account of coats which in fact were not ordered, and in the ordinary course of business would not have been ordered, until after March 1. The trial court allowed damages on account of the requirements of defendant's business during the month of March as well as prior thereto, and the allowance for damages accruing during the month of March cannot be sustained. The findings and evidence disclose the amount of damages which had accrued on and prior to April 1, 1910, but not the amount which had accrued on or prior to March 1, and consequently there must be a new trial.

4. The court found, and the evidence justifies such finding, that the reasonable cost of manufacturing the coats, or of procuring them in the market, was the advanced price demanded by plaintiff, and allowed defendant as damages the difference between the contract price and such advanced price. This was the correct rule for measuring the damages under such circumstances.

130 M.—11.

5. Plaintiff also contends that his representative had no authority to make the contract set forth in the findings of the court; and that such contract is not the contract alleged in the answer and is not established by the evidence.   The court amended the counterclaim as alleged in the answer to conform to the facts found by the court and did not thereby exceed its discretion.   We find ample evidence that the contract was made under authority from plaintiff and was subsequently ratified by him.

For the error in allowing damages for the business which accrued during the month of March, 1910, the judgment must be and is reversed.