Ross E. MEADER et al., Appellants, v. INCORPORATED TOWN OF
SIBLEY et al., Appellees.

**CONTRACTS:** Mutuality—Purchase of Indefinite Quantity. A con-
1 tract wherein, for a series of continuous years, one party agrees to
sell, and another party, who has an established business and whose
wants can be approximately determined, agrees to buy, a named
commodity, which contract is supported by considerations other
than the mutual promises of the parties, will not be declared want-
ing in mutuality because the purchasing party is not bound to pur-
chase *any specified quantity* of such commodity.

**MUNICIPAL CORPORATIONS:** Contracts in General—Sale of Elec-
2 trical Current. A city or town owning its own electric light and
power plant may, under Sec. 724, Code Supp., 1913, validly contract
to furnish, at its corporate limits, electric power for a *stated* time
and at a *stated* rate to another city or town or to an "outside"
private party, and may not thereafter, by ordinance or otherwise,
change said contract in its schedule of rates.

EVANS, J., dissents.

**MUNICIPAL CORPORATIONS:** Contracts in General—Sale of Electric
3 Energy—Power Over Purchaser. A city or town which has con-
tracted to sell, "at its corporate limits," electric power to "out-
side" public or private parties, has no power to change the con-
tract rate for such power or to otherwise levy any charge on such
*outside* parties because of the fact that the meter was located a few
feet *inside* the corporate limits of the selling municipality.

*Appeal from Osceola District Court.*—WILLIAM HUTCHINSON,
Judge.

APRIL 4, 1924.

ACTION in equity, to enjoin the carrying out of a certain contract entered into between the incorporated town of Sibley and certain other parties, providing for the sale of electric current by the said incorporated town. A demurrer to plaintiffs' petition was sustained, and plaintiffs appeal.—*Affirmed.*

*Clark, Dwinell & Meltzer,* for appellants.

*T. E. Diamond* and *E. H. Koopman,* for appellees.

FAVILLE, J.—I. Appellants allege that they are each of them residents and taxpayers of the incorporated town of Sibley, and are each consumers of electrical energy produced and distributed by a municipal electric light and power plant owned and operated by said incorporated town. It is alleged that, on or about the 14th of July, 1914, the said incorporated town entered into a written contract with the Ocheyedan Electric Company, a private corporation, and with the incorporated towns of Harris and Lake Park, by the terms of which written contract it is alleged that said incorporated town of Sibley undertook to deliver electric current to the appellees the Ocheyedan Electric Company and the incorporated towns of Harris and Lake Park, at a fixed rate, as provided in said contract, for and during a period of twenty years. Appellants allege that electrical current has been and is now being furnished under said contract to the said appellees, and that the same will be furnished in the future during the life of said contract unless the performance of said contract is enjoined. It is alleged that the said contract is now being performed by the incorporated town of Sibley at a loss of $630 per month. Appellants allege that the rate provided under said contract is confiscatory, and that, as individual resident consumers of electrical current in the incorporated town of Sibley, they are required to pay a higher rate because of the existence of said contract than they would otherwise be compelled to pay for the electrical current used by them. The petition also alleges that the contract in question is void for want of mutuality, and that the action of the incorpo-

rated town of Sibley in entering into the same was *ultra vires,* and that the contract is in contravention of the statutes of the state, and is illegal and void.

It is further alleged in the petition that the incorporated town of Sibley has established within its corporate limits a monopoly for the purpose of furnishing these appellants and others, as residents and taxpayers of said municipality, all commercial electrical energy needed by them; that it is the only person, firm, corporation, or establishment furnishing electrical energy for sale within the corporate limits of said incorporated town of Sibley, Iowa, or from whom the same can be had. It is also alleged that:

"These plaintiffs and other residents and taxpayers of said incorporated town of Sibley, Iowa, are so situated that they are, of necessity, compelled to obtain their electrical energy from the said incorporated town of Sibley, Iowa, and will be so compelled to secure the same during the remainder of the period of time for which said contract, Exhibit A, has yet to run, and at such prices and rates as the said defendant, the said incorporated town of Sibley, Iowa, may charge, unless otherwise regulated by this court."

It is further alleged that, if the incorporated town of Sibley is compelled to carry out said contract and furnish electrical energy at the rates provided therein to the other defendants, said incorporated town of Sibley, Iowa, will, "as a result thereof, be compelled to, and will, charge these plaintiffs, as resident consumers and taxpayers, not less than three (3) cents per kilowatt hour, in addition to the said proper, reasonable, and compensatory rates that should, of right, be charged these plaintiffs, as resident consumers and taxpayers, to make up the deficit for its said loss; that the said sums that will be so lost to the defendant the said incorporated town of Sibley, Iowa, if electrical energy is continued to be furnished by it at said rates provided for in said contract, to the other said defendants, must be paid, if so paid, by these plaintiffs, as resident consumers of electrical energy and taxpayers, by their paying, in addition to the said proper and reasonable charges that should be charged them, all of said loss, except that portion thereof which may be raised by the collection of taxes levied for other than proper electric

light purposes, namely, each and all of the other municipal departments; and that the same cannot be and will not be obtained in any other or different way.''

Appellants further allege that, unless the relief prayed for is granted, appellants and other residents and taxpayers of said incorporated town of Sibley will be compelled to pay the losses so occasioned by the carrying out of said contract, and that this will result in taking the property of appellants without due process of law and without compensation to them.

Appellees' demurrer challenges the sufficiency of the allegations of the petition to entitle plaintiffs to the relief demanded. The grounds are specific.

Appellants contend that the contract in question, between the incorporated town of Sibley as party of the first part, and the Ocheyedan corporation and the towns of Lake Park and

1. CONTRACTS: mutuality: purchase of indefinite quantity.

Harris as parties of the second part, is wanting in mutuality, and is unilateral, and therefore void.

At the threshold of this question, we are confronted with the proposition that appellants are not parties to this contract. They are seeking to enjoin the performance of a contract which the parties thereto, under allegations of the petition, have recognized and carried out in the past, and are now performing and will continue to perform in the future. It has been held that the objection to a contract that it is wanting in mutuality can only be made by one of the parties thereto, and not by a stranger to the contract. *Underwood v. Texas & P. R. Co.* (Tex. Civ. App.), 178 S. W. 38.

Without passing on that question in this particular case, we are, however, disposed to consider the question in regard to the mutuality of the contract in question. The contract provides as follows:

''1. The said parties of the second part, for the consideration hereinafter named, hereby agree to construct, maintain and operate for a period of twenty years from date when current is first used upon the hereinafter described transmission line, a high-voltage, electric-current transmission line, together with substation required at the town limits of Sibley, Iowa, and all equipment required therefor, except meter, for the purpose of

transmitting electric current from the corporate limits of the town of Sibley, aforesaid, to such points as the parties of the second part may deem necessary for the distribution and sale of electric current in the village of Allendorf, and the incorporated towns of Ocheyedan, Harris and Lake Park, all in the state of Iowa, and to any other points outside of the present corporate limits of the town of Sibley, and east of a north and south line three miles east of said town of Sibley, and within eight miles of said transmission line;

"2. The said party of the first part agrees to furnish within ninety days from the date hereof electric current of three-phase, sixty-cycle of the nominal voltage of twenty-three hundred volts, for twenty-four hours each day in each and every day of the year during the term above specified. The above stated three-phase circuit shall show a balanced or equal voltage between any two wires of said circuit at the point where sold to the party of the second part. The exact voltage of such electric current delivered shall be determined at such time as complete specifications for the above transmission line are prepared; and when determined, will be maintained at such a voltage with an allowable variation of two per centum above or below normal. The town of Sibley shall provide such generation capacity in its power station as to enable it to supply not less than seventy-five (75) kilowatts of power to the transmission line.

"3. The party of the first part further agrees to furnish the parties of the second part at any time during the twenty-four hours of the day, without any notification of the parties of the second part, electric current in the amount of eight per centum of the total rated capacity of the electric-current-using devices which are connected to the electric distribution lines of the said parties of the second part. The party of the first part reserves the right, however, to require ninety days' notification prior to the connection by the parties of the second part of any single additional group of electric-using devices, which have a combined capacity in excess of twenty-five kilowatts.

"4. Said electric current shall be metered by the incorporated town of Sibley, Osceola County, Iowa, at the present corporate limits, to the said parties of the second part, in monthly

periods ending at twelve (12) o'clock noon, on the last day of each calendar month. * * *

"6.   In consideration of the above, the said parties of the second part shall pay to the said incorporated town of Sibley, Osceola County, Iowa, on or before the 15th day of each month a stipulated price of said electric current as follows, to wit: [specifying rates]. * * *

"8.   In consideration of the building of said transmission line (which said transmission shall be the property of said parties of the second part, or successors) and the payments hereinbefore specified, the said party of the first part agrees to give· good and continuous service without unavoidable interruptions; etc. * * *

"9.   The total amount of electric current delivered to the transmission line is to be metered at the present corporate limits of the incorporated town of Sibley aforesaid, and the electric current delivered to the towns of Ocheyedan, Harris and Lake Park and elsewhere from the electric transmission line to be constructed as herein referred to, shall be further metered at the point where said electric current leaves the high-tension transmission line so to be constructed, and the liabilities of the several parties hereto, to wit: the Ocheyedan Electric Company, the town of Harris, and the town of Lake Park, shall be determined as follows [specifying] : * * *

"11.   This contract to furnish electricity at the rate hereinbefore specified and for the purposes hereinbefore specified shall be continued for the full period of twenty years as hereinbefore specified.

" * * * this contract shall be binding upon the party of the first part and also upon parties of the second part, their assigns, etc., and all moneys due first party for current hereinbefore provided, shall be payable at the town of Sibley, Osceola County, state of Iowa."

Appellants' contention is that this contract is lacking in mutuality because of the fact that the parties of the second part are not bound thereby to purchase any specific amount of electrical current from the seller, the incorporated town of Sibley. ·

It is a well established rule that, if the intention of the parties and the consideration on which an obligation is assumed

by one party is that there shall be a corresponding obligation on the part of the other party, the law will imply such obligation. 1 Williston on Contracts, Section 140; *Kaufman Bros. & Co. v. Farley Mfg. Co.*, 78 Iowa 679; *McGhee Cotton Co. v. Herrine*, 10 Ga. App. 700 (74 S. E. 66); *Van Loben Sels v. Bunnell*, 120 Cal. 680 (53 Pac. 266); *Scott v. Stevenson Co.*, 130 Minn. 151 (153 N. W. 316); *Garlock v. Motz Tire & Rubber Co.*, 192 Mich. 665 (159 N. W. 344).

In *Wood v. Duff-Gordon*, 222 N. Y. 88, the Court of Appeals of New York, speaking by Mr. Justice Cardozo, said:

"The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal. It takes a broader view today. A promise may be lacking, and yet the whole writing may be 'instinct with an obligation,' imperfectly expressed."

The terms of the contract in the instant case contain recitals in respect to the conditions under which it was entered into, and the intention of the parties. The first paragraph provides that the purchasers, the parties of the second part, "hereby agree to construct, maintain and operate for a period of twenty years from date * * * a high-voltage, electric-current transmission line," describing where the same is to be located, "for the purpose of * * * the distribution and sale of electric current in the village of Allendorf, and the incorporated towns of Ocheyedan, Harris and Lake Park." In other words, the contract bound the parties of the second part to construct, maintain, and operate, for a period of twenty years, a transmission line "for the purpose of transmitting electric current from the corporate limits of the town of Sibley." The contract then recites that the seller "agrees to furnish * * * electric current" to said parties of the second part at rates therein provided, and also provides that, in consideration of the agreement to furnish current at said rates, "the said parties of the second part shall pay to the said incorporated town of Sibley, Osceola County, Iowa, on or before the 15th day of each month a stipulated price of said electric current." This is followed by a specification of the schedule of rates. The contract also provides that, "in consideration of the building of said transmission line (which said transmission shall be the property of said parties of the second

part, or successors) and the payments hereinbefore specified, the said party of the first part agrees to give good and continuous service without unavoidable interruptions;'' and also provides that ''this contract shall be binding upon the party of the first part and also upon parties of the second part, their assigns,'' etc.

We therefore have a situation where the purchasing companies undertook and agreed with the selling corporation, as the first provision of the contract, that they would construct, maintain, and operate, for a period of twenty years, a transmission line from the corporate limits of the town of Sibley, for the distribution and sale of electric current to the outlying towns. The seller agreed to sell and deliver said current to said purchasers in specified amounts as measured, and the purchasers agreed to pay therefor at specified rates as fixed by the contract. Both of the parties agree that the contract shall continue for the full period of twenty years, and that the same shall be binding upon both parties thereto and their assigns.

There is no suggestion in the contract that the seller was offering to furnish electrical current to the purchasers in such an amount as the purchasers might ''want, need, or require.'' The contract specifically provides that the purchasers were to construct a transmission line, and that the current was to be delivered at the corporate limits of the town of Sibley to said transmission line, and to be duly measured by meter and paid for by the purchasers at the rate specified, according to the amount so measured. Both parties bound themselves to this plan and arrangement for the furnishing of electrical current and for the taking and paying for the same. The parties mutually agreed to enter into an arrangement whereby the purchasing parties undertook at their own expense to erect a transmission line, carrying the same to the corporate limits of the incorporated town of Sibley, and agreed to ''*maintain and operate*'' said transmission line for twenty years, for the purpose of transmitting electrical current from the corporate limits of Sibley under said contract. The selling party agreed to furnish the amount of electricity so used and measured by the meter provided for in the contract, at the rate therein specified. This contract was mutual, and the obligations were reciprocal.

In *Scott v. Stevenson Co.*, 130 Minn. 151 (153 N. W. 316), the court said:

"In many lines of business it has become common in late years for those engaged therein to contract in advance, at specified prices, for such quantity of materials or of goods as may be needed in such business during a specified period of time. Where such contracts are supported by a consideration other than the mutual promises of the parties, their validity is beyond question. Where the only consideration for the promise to sell is the promise of the buyer to purchase such quantity as he may need, the authorities are not unanimous; but the decided weight of authority is to the effect that, if the buyer has an established business whose requirements may be estimated approximately, the contract is not void either for uncertainty or want of mutuality, but is valid, and may be enforced to the extent of the ordinary requirements of such business, when carried on and conducted in the manner contemplated by the parties at the time of making such contract."

In *Walker Mfg. Co. v. Swift & Co.*, 200 Fed. 529, the court said:

"But where the buyer has an established business, it is competent for the seller to contract with him to furnish him with such supplies as may be needed by him during a certain period; for in such case both parties would be bound, the one to furnish and the other to take what was needed. *Klipstein & Co. v. Allen* (C. C.), 123 Fed. 992. Business necessities require contracts of this class, though more or less indefinite, to be upheld. Thus, a hotel keeper could purchase his necessary supply of ice, a foundry all the coal needed for the season, or a furnace company its requirements of iron. *Crane v. C. Crane & Co.*, 105 Fed. 869 (45 C. C. A. 96), and cases there cited. In such cases it can be ascertained with some degree of certainty the quantity needed, and the intention of the parties, it is presumed, was to contract in reference to such quantity. The business being established, the purchase is an incident to it, and the purchase would be reasonably necessary, whether the prices of the article rose or fell. Such contracts are, therefore, held valid."

In *Crane v. Crane & Co.*, 105 Fed. 869, the court said:

"It is within legal competency for one to bind himself to

furnish another with such supplies as may be needed during some certain period for some certain business or manufacture, or with such commodities as the purchaser has already bound himself to furnish another. Reasonable prevision in business requires that such contracts, though more or less indefinite, should be upheld. Thus, a foundry may purchase all the coal needed for the season; or a furnace company its requirements in the way of iron; or a hotel its necessary supply of ice. *Minnesota Lumber Co. v. Whitebreast Coal Co.,* 160 Ill. 85 (43 N. E. 774); *National Furnace Co. v. Keystone Mfg. Co.,* 110 Ill. 427; *Railway Co. v. Witham,* L. R. 9 C. P. 16; *Smith v. Morse,* 20 La. Ann. 220. So, too, a dealer in coal in any given locality may contract for such coal as he may need to fulfill his existing contracts, regardless of whether delivery by him to his customers is to be immediate or in the future. *Shipman v. Straitsville Cen. Min. Co.,* 158 U. S. 356 (15 Sup. Ct. 886, 39 L. Ed. 1015). In all these cases, contracts looking towards the future, and embodying subject-matter necessarily indefinite in quantity, have been upheld; but it will be observed that, although the quantity under contract is not measured by any certain standard, it is capable of an approximately accurate forecast.''

Appellants cite *Cold Blast Trans. Co. v. Kansas City Bolt & Nut Co.,* 114 Fed. 77. In that case, however, the court said:

''Contracts for the future supply during a limited time, of articles which shall be required or needed or consumed by an established business, or used in the operation of certain steamships or other machinery, are no exceptions to this principle, because they fall under the rule, '*Id certum est quod certum reddi potest.*' * * * The line of demarcation between valid and invalid contracts here runs between the requirements of machinery, or of an established business, and the wants, desires, or requirements of the tentative vendee; and that because the former are either reasonably certain or may be made so by evidence, while the latter are conditioned by the will of the tentative vendee alone, and are both uncertain and capable of infinite variation.''

As sustaining our conclusion that the contract in question is not lacking in mutuality, see *Bartlett Springs Co. v. Standard Box Co.,* 16 Cal. App. 671 (117 Pac. 934); *National Furnace Co.*

*v. Keystone Mfg. Co.*, 110 Ill. 427; *Dailey Co. v. Clark Can. Co.*, 128 Mich. 591 (87 N. W. 761); *Scott v. Stevenson Co.*, supra; *Wells v. Alexandre*, 130 N. Y. 642 (29 N. E. 142); *Grand Prairie Gravel Co. v. Joe B. Wills Co.*, (Tex. Civ. App.) 188 S. W. 680; *Western Macaroni Mfg. Co. v. Fiore*, 47 Utah 108 (151 Pac. 984); *Excelsior Wrapping Co. v. Messinger*, 116 Wis. 549 (93 N. W. 459); *Minnesota Lbr. Co. v. Whitebreast Coal Co.*, 160 Ill. 85 (43 N. E. 774); *Burge v. Gough*, 153 Iowa 183; *Des Moines Valley R. R. Co. v. Graff*, 27 Iowa 99.

II.  Appellants contend that the contract in question is *ultra vires* and void; furthermore, that, if it be held that, under Sections 720 and 724 of the Code as amended, a municipality has authority to enter into such a contract for the sale of electrical current produced by a municipally owned plant, in such event the said statutes are violative of the due-process clause of the Federal Constitution.

2. MUNICIPAL CORPORATIONS: contracts in general: sale of electrical current.

The contract in this case was before us for consideration in *Incorporated Town of Sibley v. Ocheyedan Elec. Co.*, 194 Iowa 950, and the propositions now urged by appellants were argued at length in said case.  We are asked to overrule the decision in that case.  We therein held that the contract in question was not invalid and void; that, under the sections cited, the legislature had conferred jurisdiction upon municipalities owning and operating such plants to enter into contracts like the one in question for the sale of the produce of such municipally owned plants to any municipality, individual, or private corporation outside of the city or town limits.  The questions were discussed at length in the majority and dissenting opinions in said case.

It is most strenuously insisted in this case that the allegations of the present petition are that the point of delivery of the electrical current was at a substation located some fifty feet within the corporate limits of the town of Sibley, where a site for the location of the meter and the terminus of the transmission line was granted by the incorporated town of Sibley, and that this allegation makes a material distinction in the cases.

As pointed out in the *Ocheyedan* case, the contract expressly provided, by repetitious expressions, that the electrical current

was to be delivered at the corporate limits of the incorporated town of Sibley. In that case we said (p. 960):

"This contract was made in contemplation of the provision of Section 724, supra, by which the municipality was selling its product to 'a private corporation outside of the city or town limits.' The contract was evidently made in pursuance of said statute, and a delivery of this product 'at the corporate limits' did not make the purchaser amenable to the ordinances of the city. The delivery was 'to the transmission line,' 'at the corporate limits.' As we understand the record, the transmission line was wholly without the corporate limits."

Appellants' contention at this point now is twofold: namely, that, under Sections 720 and 724, the city council can, by ordinance, regulate rates for electrical current sold to one wholly outside the corporation; and secondly, that, inasmuch as the terminus of the transmission line comes within the corporate limits, the purchasing parties are placed in exactly the same situation as inhabitants of the town, notwithstanding the terms of the contract.

Section 724 gives cities and towns the power to sell the products of municipal electric power plants to any municipality, individual, or private corporation outside of the city or town limits. The same section also provides that the municipality may assess, from time to time, upon each tenement or other place supplied with power, reasonable rents or rates fixed by ordinance, and may levy a tax to pay the expense of operating such plant.

We pointed out in the *Ocheyedan* case that the legislature has clothed cities and towns with a dual power, as regards municipally owned public-service plants. One is to establish and maintain the same for the benefit of the inhabitants of the municipality over whom the city or town has jurisdiction, whose rates are regulated by ordinance, and whose property may be subject to assessment for the maintenance and operation of the plant which the municipality owns. In its other capacity, as provided by the statute, the municipality is authorized to sell its product to those entirely outside its jurisdiction, against whom it could have no power to levy any assessment.

If Section 724 confers on the town council the power to

regulate by ordinance the rates for electrical current furnished to one outside the corporate limits, then, by the same sentence of the statute, it also confers the power to assess a tax against each tenement or other place supplied with current, for the maintenance and operation of the plant. If, as contended, the "outsider" is to be in exactly the same situation under this statute as the inhabitant of the city, then he must be subject to all of the conditions to which the city inhabitant is subject. If the statute confers extraterritorial power on the council to fix and regulate by ordinance the rates to be charged an "outsider," then, by the same stroke of the legislative pen, the council was clothed with authority to assess and levy a tax against the "outsider" for the maintenance and operation of the plant.

Could it be successfully contended that the legislature gave the extraterritorial power to town councils to thus tax property wholly outside the corporation? The same statute provides that cities and towns may construct the necessary poles along public highways, upon which to construct transmission lines. Suppose that, under this statute, a city constructed a transmission line outside the corporate limits, and supplied farmers with electrical current by such means. Could it be contended that, under the statute, the municipality could by ordinance fix the rate for such current so furnished, and could not "*sell*" it to the farmers by contract? Does the statute give the municipality extraterritorial jurisdiction to assess a tax against the farms of such parties for the maintenance of the power plant? Suppose the incorporated town of Sibley carried the current to Lake Park. Could it by ordinance "fix and regulate" the rate and assess and levy a tax against the property of Lake Park? If the statute gives the extraterritorial power in one respect, it unquestionably confers it in the other. In fact, it gives neither, and does not pretend to do so.

The statute does provide, and purposely so, that the municipality may deal with its own inhabitants and with outsiders as well. With one, it has certain powers and certain rights in the premises. With the other, it deals in another capacity, and with certain other rights. The two are not identical, nor could they well be.

The legislature doubtless realized the public convenience

of making it possible for cities and towns to construct electric power plants of sufficient capacity to meet the needs of the inhabitants of the town, and also of the territory adjacent thereto, even including other municipalities. In providing that this might be done, the legislature did not intend to give cities and towns extraterritorial jurisdiction to enact ordinances applicable in the countryside or in other municipalities, nor to clothe such cities and towns with authority to levy taxes on property remote from municipal boundaries.

As pointed out in the *Ocheyedan* case, the incorporated town of Sibley had authority, under the statute, to enter into the contract in question for the sale of its product to an outside municipality.

Let us examine the contract from the angle of the purchasing municipalities.

It is to be noticed that Section 720 of the Code Supplement of 1913 provides that cities and towns "shall have power *to enter into contracts* with persons, corporations or *municipalities* for the *purchase* of heat, gas, water, and electric current for either light or power purposes." Applying this statute to the facts of this case, we have the towns of Lake Park and Harris expressly authorized and empowered by the legislature to "*enter into contracts*" with other municipalities for the "*purchase*" of electric current for sale and distribution among their inhabitants. Section 724 expressly gave the municipality of Sibley the power to *sell* to *outside* municipalities electric current produced by it. When the legislature provided that one municipality may enter into a contract to *purchase*, and also that the other municipality was empowered to *sell* to such municipality, it was made as plain as language can put it that, under such conditions, the two municipalities could "*enter into a contract*" for the purchase and sale of such current. Any other construction of the express provisions of the statutes would lead to complex, if not absurd, results, and would defeat the very language of the legislation.

If, as contended by appellants, there is no power under these statutes for two municipalities to "enter into a contract" for a definite time and at definite rates, for the purchase and

sale of electric current, then not only are the statutes nugatory, but an anomalous situation would follow.

Obviously, the municipalities of Harris and Lake Park entered into the contract in question relying upon its validity, as authorized by the statute. It may be assumed that they then proceeded to adjust their internal affairs accordingly, and provided by ordinance for the distribution of the electrical current so purchased, among their inhabitants at rates fixed upon the basis of the contract for the purchase of the current. Assume that no sooner is this done, however, than the selling municipality repudiates the terms of the contract, and by its own ordinance proceeds to raise the rates. Thereupon, the purchasing municipalities must proceed to raise the rates to their inhabitants by their ordinances. It may well be that the purchasing municipalities would never have entered into a contract of purchase of electric current from the selling municipality if their electors had supposed that, by so doing, the municipality was not buying current at a rate that could be relied upon.

It may well be assumed that the electors of a purchasing municipality would hesitate to authorize its officers to "enter into a contract" with another municipality which was, in fact, not a contract at all, so far as rates are concerned, and which, in effect, left the matter of fixing local rates in the hands of the council of a foreign municipality.

Instead of placing themselves in any such situation, the electors of a municipality might well prefer that it should not make a contract, or might prefer to establish a municipal plant, or to buy from some private person, firm, or corporation.

The legislature obviously intended to meet just such a situation, and by statute enabled one municipality to "sell" the product of its municipally owned plant to another, and authorized the other municipality to "enter into a contract" to "purchase" the same. But the legislature never intended by these statutes that such a contract should be void as to rates, and that the purchasing municipality and its inhabitants should be placed in the situation of having the rates for current furnished for the use of its inhabitants fluctuate at the behest of the council of a foreign municipality.

The legislature clearly and expressly provided for the pre-

cise situation we have here. It directly authorized one munici-
pality to "*sell*" to another municipality. It likewise expressly
empowered the other municipality "to enter into a contract"
to "*purchase*" the product from the selling municipality. The
statutes are not ambiguous. The legislature had power to enact
them, and they are not invalid.

It is urged that, inasmuch as the petition alleges that the
terminus of the transmission line was located a few feet within
the town limits of Sibley, the purchasers ceased to be "munici-
palities, individuals or corporations outside of
the city or town limits," and became subject to
ordinance regulation, the same as inhabitants of
the incorporated town.

3. MUNICIPAL
CORPORATIONS:
contracts in
general: sale of
electrical energy:
power over pur-
chaser.

The contract clearly and unmistakably pro-
vides that the incorporated town of Sibley was to furnish elec-
trical current to three "outside" parties, "at the corporate
limits." This is the *contract*. This is the thing by which the
rights of the parties are fixed. This is the instrument which
appellants declare is invalid. It is the contract that is in issue
here; not what was done under it.

Even though, for convenience of operation, it be true that
the meter through which the current passed to the transmission
line was located a few feet within the corporate limits, this did
not change the terms of the contract, nor did it make the towns
of Lake Park and Harris and the Ocheyedan Electric Company
"inhabitants" of the incorporated town of Sibley, so that the
council of said town could make an assessment and levy a tax
against them. The logic of appellants' petition is that if, under
such a contract as the one in suit, providing for a sale of elec-
trical current by a municipality "to any municipality, individ-
ual, or private corporation outside of the city or town limits,"
if the terminus of the transmission line comes inside the boun-
dary of the city limits, then *ipso facto* the contract ceases to be
one for the sale of current to a party "outside of the city or
town limits," as authorized by Code Section 724, and the pur-
chasing party must be treated exactly like any inhabitant of the
town.

The clear intent of all of the parties to this contract and
its very terms and conditions provide for the sale by the munici-

pality of electrical current to two "outside" municipalities and one "outside" private corporation. The mere fact that, under the contract, which provided for delivery of the current at "the corporate limits," the terminus of the transmission line was a few feet inside of the corporate limits, did not, under this contract, change the status of the parties, nor make these municipalities and this private corporation "inhabitants" of the selling corporation, nor subject to its control by ordinance. The contract must be construed in accordance with the plain intention of the parties.

We hold that the contract was valid; that the incorporated town of Sibley could not modify the price for electrical current provided for therein by the enactment of a city ordinance; and that it could not levy a tax upon the property of appellees for the operation and maintenance of the electric plant.

We have prolonged the discussion upon this branch of the case perhaps beyond an unwarranted length, because of the insistence of counsel for appellants, who contend that the case of *Incorporated Town of Sibley v. Ocheyedan Elec. Co.*, supra, should be overruled. We are disposed to adhere to the pronouncement made in said case. We hold that the contract is valid, and that the statute under which said contract was executed is not in violation of constitutional provisions.

The demurrer to the petition was properly sustained, and the judgment of the trial court dismissing appellants' petition is—*Affirmed.*

ARTHUR, C. J., PRESTON, STEVENS, DE GRAFF, and VERMILION, JJ., concur.

EVANS, J., dissents as to the second division of the opinion, for the reasons set forth in the dissent in the case of *Incorporated Town of Sibley v. Ocheyedan Elec. Co.*, 194 Iowa 950.